FILED IN OPEN COURT
U.S.D.C. - Atlanta

AUG 08 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHALMER DETLING, II<br>A/K/A CHUCK DETLING | Criminal Indictment<br><br>No. 1:18-CR-309<br><br>**UNDER SEAL** |

THE GRAND JURY CHARGES THAT:

### Counts One through Seven
(18 U.S.C. § 1343 – Wire Fraud)

### Background

1. The defendant CHALMER DETLING, II a/k/a CHUCK DETLING ("DETLING") resided in Marietta, Georgia. DETLING was admitted to the State Bar of Georgia in 2004. Beginning in approximately May 2012 and continuing until approximately December 2016, DETLING was the owner and operator of the Detling Law Group (and a successor entity Detling Cole, LLC – collectively "Detling Law Group"), a law firm based in Marietta, Georgia. DETLING and the Detling Law Group primarily engaged in personal injury law. On or about October 31, 2016, the Supreme Court of Georgia accepted DETLING's petition for voluntary surrender of his law license, which the Supreme Court of Georgia described as "tantamount to disbarment." DETLING is currently not licensed to practice law in the State of Georgia.

2. Under the Georgia Rules of Professional Responsibility, lawyers are required to hold the funds of clients or third parties separate from the lawyer's

own funds or property in lawyers' trust accounts. Lawyers licensed in Georgia are therefore prohibited from co-mingling client funds with their own funds.

3. An Interest on Lawyer Trust Account ("IOLTA") is a type of lawyer trust account. IOLTA accounts are used to deposit client funds that are nominal or are to be held for a short period of time. While it is permissible for a lawyer to pool different clients' funds in an IOLTA account, any funds in an IOLTA account are the property of the client and not the lawyer. In Georgia, any interest earned on an IOLTA account is remitted to the Georgia Bar Foundation to help support legal services for the poor.

4. While it was a going entity, the Detling Law Group maintained IOLTA accounts at SunTrust Bank.

5. Injury Financing, LLC d/b/a/ Capital Financing is a financing company based in Sandy Springs, Georgia. Capital Financing extends various types of financing to law firms and plaintiffs, including "litigation advances" to cover living expenses and/or medical expenses of plaintiffs who typically have a pending personal injury or worker's compensation lawsuit. Capital Financing maintains an online portal through which a plaintiff (or their attorney with the client's authorization) may apply for such "litigation advances." Capital Financing also accepts applications via email. Capital Financing maintains its servers in Florida.

6. Litigation Ventures LLC is a company based in New York City. Litigation Ventures provides "litigation advances" to plaintiffs who typically have a pending personal injury lawsuit to cover non-litigation related expenses. During

the relevant period, Litigation Ventures maintained a business account at Citibank, N.A., New York, New York.

7. Mighty Financing LLC is a company based in New York City. Mighty Financing provides "litigation advances" to plaintiffs who typically have a pending personal injury lawsuit to cover non-litigation related expenses. During the relevant period, Mighty Financing maintained a business account at Citibank, N.A., New York, New York.

8. LFC Group ("LFC") is a company based in New York City. Among its businesses, LFC provides "litigation advances" to plaintiffs who typically have a pending personal injury lawsuit to cover non-litigation related expenses. During the relevant period, LFC maintained a business account at Citibank, N.A., New York, New York.

9. Litigation Ventures, Mighty Financing, and LFC are related business entities operating under common ownership.

## Litigation Financing Business

10. As relevant to this Indictment, Capital Financing, Litigation Ventures, Mighty Financing, and LFC (collectively "litigation financing entities") provide modest financing ("litigation advances") to plaintiffs (mainly with personal injury cases) for non-litigation related expenses (*e.g.*, living and medical expenses) while their lawsuits are pending. Typically, a plaintiff applies for such financing by electronically submitting a signed financing agreement either by email or through an online portal. The financing agreement includes, among other things, the amount of money being advanced to the plaintiff and a

3

repayment schedule. Although the financing agreement contemplates that a plaintiff will repay the litigation advances with interest, the litigation financing entities do not consider such financing to be "loans." Instead, they characterize this financing as "investments" or "advances" because a plaintiff who has no recovery would not be obligated to repay the litigation financing entity. The litigation financing entities determine whether to provide a litigation advance to a plaintiff by, in part, evaluating the merits of the plaintiff's claim. Accordingly, a plaintiff (or his or her attorney) will submit information regarding the plaintiff's underlying lawsuit. The litigation advances typically range from several hundred to several thousand dollars.

### The Scheme to Defraud Litigation Financing Entities and Use of Client Personal Identifying Information

11. Beginning in at least October 2014 and continuing until at least April 2016 in the Northern District of Georgia and elsewhere, DETLING devised a scheme to defraud multiple litigation financing entities by obtaining fraudulent litigation advances in the names of his law firm's clients without the clients' knowledge or authorization. During this period, DETLING obtained approximately 50 fraudulent litigation advances totaling more than $383,000 in the names of 36 clients.

12. DETLING applied for the fraudulent litigation advances (typically submitting the paperwork via email or through an online portal) using certain personal identifying information ("PII") of his clients, including their names and Social Security numbers. As noted above, each of the litigation financing entities

4

required the clients (the purported borrowers) to execute a financing agreement. DETLING submitted applications that had been purportedly signed and executed by the respective clients. DETLING knew when he submitted the agreement paperwork that the clients had not actually signed or executed the agreement.

13. DETLING was able to secure these fraudulent litigation advances without his clients' knowledge in part because the litigation financing entities did not require the clients to be present when applying for the litigation advances or receiving the disbursements.

14. In order to further conceal that he applied for and received the fraudulent litigation advances without his clients' permission, DETLING directed the litigation financing entities to send the loan proceeds directly to him – by either wiring the fraudulently obtained proceeds directly to DETLING's law firm's IOLTA accounts at SunTrust Bank or by DETLING personally picking up checks from the lending entity and depositing the funds into the IOLTA accounts.

15. The fraudulently obtained litigation advances would thereafter be transferred from the IOLTA accounts to Detling Law Group's operating accounts, or other Detling Law Group accounts.

16. DETLING further concealed that he applied for and received the fraudulent litigation advances in his clients' names without their knowledge or authorization by often providing inaccurate contact information to the litigation financing entities for the clients who were purportedly seeking the litigation

advances. This included providing fake phone numbers and/or email addresses in the financing applications.

17. DETLING obtained approximately thirteen fraudulent litigation advances from Capital Financing.

18. DETLING obtained approximately twenty-three fraudulent litigation advances from Litigation Ventures.

19. DETLING obtained approximately six fraudulent litigation advances from Mighty Financing.

20. DETLING obtained approximately eight fraudulent litigation advances from LFC.

21. On or about the dates set forth in the table below, in the Northern District of Georgia and elsewhere, DETLING for the purpose of executing and attempting to execute the scheme and artifice described above in Paragraphs 11 through 20, such scheme and artifice having been devised and intended to be devised to defraud, and for the purpose of obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material fact, knowing and having reason to know that the pretenses, representations, promises, and omissions were and would be material, did knowingly cause the following wire communications to be transmitted in interstate commerce:

| Count | Date (on or about) | Wire Communication |
|---|---|---|
| 1 | February 2, 2015 | Submission of Financing Application through Capital Financing's Online Portal in the name of T.M. requesting $7500 |
| 2 | February 4, 2015 | Submission of Financing Application through Capital Financing's Online Portal in the name of L.F.W requesting $5000 |
| 3 | March 12, 2015 | Submission of Financing Application through Capital Financing's Online Portal in the name of M.S.K. requesting $10,000 |
| 4 | April 1, 2015 | Wire Transfer of $8500 from Litigation Ventures' Citibank Account to Detling Group LLC's IOLTA account at SunTrust |
| 5 | April 30, 2015 | Wire transfer of $2500 from Litigation Ventures' Citibank Account to Detling Group LLC's IOLTA account at SunTrust |
| 6 | October 21, 2015 | Wire transfer of $15,000 from Litigation Ventures' Citibank Account to Detling Group LLC's IOLTA account at SunTrust |
| 7 | November 4, 2015 | Wire transfer of $15,000 from Mighty Financing's Citibank Account to Detling Group LLC's IOLTA account at SunTrust |

All in violation of Title 18, United States Code, Section 1343.

**Counts Eight through Fifteen**
(18 U.S.C. § 1028A(a)(1) – Aggravated Identity Theft)

22. The Grand Jury re-alleges and incorporates by reference Paragraphs 1 through 21 of this indictment as if fully set forth herein.

23. On or about the dates set forth in the table below, in the Northern District of Georgia and elsewhere, DETLING, knowingly transferred, possessed, and used, without lawful authority, the means of identification of other persons, including the names and Social Security numbers of actual persons known to the

7

Grand Jury and identified below by their initials, during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), namely wire fraud, in violation of 18 U.S.C. § 1343, as charged in in Counts 1 through 7 of this Indictment.

| COUNT | DATE OF OFFENSE (on or about) | RELATED FELONY | INITIALS OF ACTUAL PERSON WHOSE IDENTITY WAS USED | MEANS OF IDENTIFICATION |
|---|---|---|---|---|
| 8 | February 2, 2015 | Wire Fraud, as charged in Count 1 of this Indictment | T.M. | Name, Date of Birth |
| 9 | February 4, 2015 | Wire Fraud, as charged in Count 2 of this Indictment | L.F.W | Name, Date of Birth |
| 10 | March 12, 2015 | Wire Fraud, as charged in Count 3 of this Indictment | M.S.K. | Name, Date of Birth, Social Security Number |
| 11 | March 30, 2015 | Wire Fraud, as charged in Count 4 of this Indictment | V.M. | Name |
| 12 | March 31, 2015 | Wire Fraud, as charged in Count 4 of this Indictment | B.P. | Name |
| 13 | April 17, 2015 | Wire Fraud, as charged in Count 5 of this Indictment | K.P. | Name |
| 14 | October 20, 2015 | Wire Fraud, as charged in Count 6 of this Indictment | H.M. | Name |

| 15 | November 3, 2015 | Wire Fraud, as charged in Count 7 of this Indictment | W.G. | Name |

All in violation of Title 18, United States Code, Section 1028A(a)(1).

## FORFEITURE PROVISION

24. Upon conviction of Counts One through Seven of this Indictment, DETLING shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violations. The property to be forfeited includes, but is not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offenses alleged in Counts One through Seven of the Indictment.

25. If any of the property described above, as a result of any act or omission of a defendant:

   (a) cannot be located upon the exercise of due diligence;

   (b) has been transferred or sold to, or deposited with, a third party;

   (c) has been placed beyond the jurisdiction of the Court;

   (d) has been substantially diminished in value; or

   (e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

A _____True_____ BILL

_____/s/_____
FOREPERSON

BYUNG J. PAK
United States Attorney

ALEX R. SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602

JOHN S. GHOSE
*Assistant United States Attorney*
Georgia Bar No. 446568

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181