IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*versus*<br><br>CHALMER DETLING, II | Criminal Action No.:<br>1:18-CR-00309-LMM-LTW-1 |

### REPLY TO THE GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT'S PRETRIAL MOTIONS

On October 30, 2018, Defendant Chalmer Detling, II, filed the following five pretrial motions: Motion to Dismiss for Lack of Jurisdiction, Motion to Dismiss Indictment, Motion for Bill of Particulars, Motion to Strike Indictment Surplusage, and a Motion to Allow Participation in Voir Dire. (Docs. 26-30.) On December 14, 2018, the government timely an omnibus response. (Doc. 33.)  Mr. Detling now files this reply in support of his pretrial motions[1].

### Argument and Citation to Authority

**I.     Motion to Dismiss for Failure to Allege Federal Jurisdiction**

Mr. Detling was correct that the original indictment in this case failed to properly allege federal jurisdiction. It described Mr. Detling's law firm using IOLTA accounts at SunTrust Bank to commit wire fraud, but did not mention the

---

[1] The government does not oppose Mr. Detling's Motion to Allow Participation in Voir Dire and therefore, the defense does not address that filing in this brief.

geographic location of SunTrust. (Doc. 1.) Mr. Detling filed a motion to dismiss the counts that referenced the SunTrust IOLTA accounts because they did not properly allege federal jurisdiction and were therefore defective. (Doc. 26.) After Mr. Detling filed his pretrial motions, the government filed a superseding indictment, adding the geographic location of SunTrust Bank but making no other changes or edits. (Doc. 35.) Only because the government corrected this error is this motion now moot.

## II.     Motion to Dismiss for Failure to Allege an Offense

Mr. Detling moved to dismiss the indictment under Rule 12(b)(3)(B)(v), on the ground that it fails to state an offense. (Doc. 27.) In footnote two of its response, the government claims that Mr. Detling "appears to concede" that the allegations establish that he had the intent to deceive the litigation financing entities (Doc. 33, pg. 9.) This is entirely untrue. Mr. Detling has not conceded anything relating to the accusations in this case. Rather, his argument is that the indictment describes a scheme to deceive, rather than a scheme to defraud, and does not charge a federal crime.

The government has chosen to frame this crime as one against the finance companies. The indictment does not charge Mr. Detling with breaching some duty to his clients by violating a fiduciary relationship or embezzling funds that might rightly belong to them. By choosing to frame the case as one where the finance

companies are the victim, the government must show that there was some intended harm to the finance companies and that they did not get the benefit of their bargain. That requires a thorough understanding of the transactions.

Both the indictment and the government's omnibus response show that the government lacks a firm grasp on the nature of these transactions, however. For example, the indictment states that "the litigation financing entities do not consider such financing to be 'loans'" but then goes on to state that "DETLING directed the litigation financing entities to send the <u>loan</u> proceeds directly to him." (Doc. 1, Doc. 35.) In fact, the Government's omnibus response uses the word "loan" at least 18 times, referring to "loan applications", "loan agreements", and "loans taken out in their (clients) names."

The government overlooks the significance of the fact that these were not loans. Loans have lenders and borrowers and imply a personal obligation on the part of the borrower. These transactions were an asset sale, where the finance company is the buyer and the person with the personal injury claim is the seller. The asset involved is the speculative proceeds of a personal injury lawsuit. In fact, the client is referred to in the agreements as the transferor.

Therefore, the only question here is whether or not these finance companies got what they bargained for. The indictment doesn't allege that these agreements were unenforceable or that they didn't create a legally recognizable lien. In fact,

the contracts specifically state that "the Assignment evidenced hereby is intended to and shall vest in CF (one of the alleged victims) a present right to the Proceeds to the extent of the obligations due" and that the finance companies may file "a security interest, lien or encumbrance in favor of CF."

As soon as the agreement was signed the litigation financing entities had an enforceable interest in the proceeds of the subject personal injury case. They had the right to file that agreement publically to put third parties on notice and they even had the right to bring suit against the lawyer if funds were not properly distributed. The litigation finance entities are in the business of buying contingent interests in personal injury cases. What they received was a contingent interest in a personal injury case and the indictment never alleges otherwise. The indictment never alleges that these agreements, even if they were purportedly made without the client's knowledge, are somehow less valid then they would be if the clients signed the documents themselves. This is a fatal flaw and the Court has no choice but to dismiss.

Not every misrepresentation, including those designed to induce a transaction, necessarily amounts to fraud. "[A] schemer who tricks someone to enter into a transaction has not 'schemed to defraud' so long as he does not intend to harm the person he intends to trick." United States v. Takhalov, 827 F.3d 1307, 1313 (11th Cir. 2016). "Thus, a 'scheme to defraud,' as that phrase is used in the

wire-fraud statute, refers only to those schemes in which a defendant lies about the nature of the bargain itself." Id. "But if a defendant lies about something else—e.g., if he says that he is the long-lost cousin of a prospective buyer—then he has not lied about the nature of the bargain, has not 'schemed to defraud,' and cannot be convicted of wire fraud on the basis of that lie alone." Id. at 1314.

Obviously, any fact that must be proved in trial must also be alleged in the indictment. In this case, the indictment alleges a scheme wherein Mr. Detling, a lawyer with actual clients, all of whom had with real, pending civil claims, applied for and received monetary advances from litigation financing entities. According to the indictment, Mr. Detling was able to conceal "that he applied for and received the fraudulent litigation advances in his clients' names without their knowledge or authorization by often providing inaccurate contact information to the litigation financing entities for the clients who were purportedly seeking the litigation advances." (Doc. 1, Doc. 35.) If true, that misrepresentation goes not to the heart of the bargain, but to an ancillary detail, and is analogous to the example in Takhalov of lying about being the long-lost cousin of a prospective buyer. The indictment does not describe Mr. Detling creating fictitious clients or fake cases to receive this

money and nothing in the indictment supports the contention that Mr. Detling intended to harm – rather than trick – the financial litigation entities[2].

Like the drink buyers in <u>Takhalov</u>, there is no evidence the litigating financing entities did not get what they bargained for, which is an interest in the civil litigation claims. The government has not alleged any evidence showing the entities cared whether Mr. Detling or his client applied for the advances, or that they cared about the client getting the advances directly. Indeed, they deposited the money into Mr. Detling's firm's accounts or issued checks directly to Mr. Detling's firm. Rather than providing a concession in his filing, Mr. Detling simply highlighted the difference between deceit and fraud, as the Eleventh Circuit has done in <u>United States v. Takhalov</u>, and described how the indictment in his case describes an intent to trick but not an intent to harm. Because the indictment fails to properly allege fraud – and because the aggravated identity theft counts depend on the wire fraud counts as the related felony – the entire indictment fails to state an offense and Mr. Detling's motion should be granted.

### III.     Motion for a Bill of Particulars

The government begins its opposition with the standard language used to argue against a bill of particulars – that it is not for general discovery, not

---

[2] Mr. Detling does not concede he intended to trick the financial litigation entities in this filing, just as he did not concede such a thing in his initial motion.

appropriate when the information is available through other sources, and is not designed to provide a road map to the government's case. (Doc. 33, pp. 13-15.) Even if these general principles offer marginal guidance on some level, there is nothing that prevents a district court from ordering a bill if one is necessary to understand the essential facts underlying the charges. After all, there are many cases where the "information" is available in discovery but a bill of particulars is nevertheless appropriate. A repository of discovery is no substitute for a short, concise statement of the essential facts.

The government appears to answer Mr. Detling's question of who, specifically, is the victim in the wire fraud counts[3]. Still, in order for Mr. Detling to prepare his defense, the government must explain the specific "material misrepresentations" made to the litigation financing entities in the online portal applications or email paperwork. The government argues that because the litigation financing entities were "the parties on the other side of those agreements", the alleged misrepresentation that his clients wanted the monetary advances was material. But it is unclear what portions of the online portal applications or email paperwork was fraudulent. The indictment stops short of saying that the litigation financing entities provided monetary advancements as the direct result of anything Mr.

---

[3] The government appears to argue that the litigation financing entities are the only victims of the wire fraud.

Detling said or failed to say in these applications. Nor does it say that Mr. Detling's clients or the litigation financing entities lost money or were unable to recoup their "investment" as a result of a statement or omission he made in this paperwork or that Mr. Detling contemplated some actual harm or injury to the alleged victim. This is important because understanding the government's fraud claim is at the core of Mr. Detling's request for a bill of particulars. If the material misrepresentations are simply the inaccurate contact information of Mr. Detling's clients, the government should provide a list of that contact information, which is exactly what Mr. Detling asked for in request 9.

The government offers little-to-no argument why it should not provide responses to requests 8–16, referring to those requests as "a catch-all category" of information. But many of these questions are crucial for trial preparation in this case. For example, it is not clear in the indictment nor in the discovery how Mr. Detling, a lawyer representing clients on legal matters, used the means of identification of others "without lawful authority" as required by the aggravated identity theft statute. Additionally, requests 11, 12, 14 and 15 seek clarity on exactly how the litigation financing entities were defrauded. Did they expect to get paid back and not receive repayment? Do they require the actual client – and never the client's lawyer – to apply for these advances? Were the litigation financing entities defrauded when clients had no recovery and were not required to pay back the

8

advance? Are there any cases that fall into the no-recovery category alleged in the indictment? The defense should not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations, which have not yet been disclosed.

Lastly, the claim about incorporating civil process into the criminal realm is pure rhetoric. Labeling a request for a bill "interrogatories" does not make it so. A bill of particulars is expressly contemplated by Fed. R. Crim. P. 7(f). It requires a motion and request from the defendant. In this case, a bill of particulars is needed for Mr. Detling to prepare his defense and avoid surprise at trial, and this motion should be granted.

### IV.  Motion to Strike Surplusage

The references in the indictment to Mr. Detling's voluntary surrender of his law license are nothing more than inflammatory and unduly prejudicial and must be stricken. Even assuming evidence or testimony from the Georgia Bar proceedings comes in at trial, that Mr. Detling surrendered his law license is irrelevant. The sentences the defense seeks to strike are not a summary of the evidence the government seeks to admit. Rather, they are conclusory statements, and they are not essential in making out a prima facie pleading of a criminal violation. Further, a limiting instruction is not sufficient to cure all surplusage. The purpose of an instruction would be to remind the jury of the government's burden

with respect to the charges, not to remind them that there is inflammatory evidence in the indictment that they can just disregard. And pointing out the offending language specifically as part of the Court's instructions only highlights the prejudice. The remedy the defense requests, to strike the irrelevant, unnecessary language, is the far better course and Mr. Detling's motion should be granted.

## Conclusion

WHEREFORE, Mr. Detling prays this Court will grant his pretrial motions.

Dated:  This 11th day of January, 2019.

        Respectfully Submitted,

        */s/ Molly Hiland Parmer*
        MOLLY HILAND PARMER
        Georgia Bar No.  942501
        ATTORNEY FOR MR. DETLING

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing motion was formatted in Book Antiqua 13 pt., in accordance with Local Rule 5.1B, and was electronically filed this day with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to counsel of record, Alex Sistla and John Ghose, U.S. Attorney's Office-ATL, 600 U.S. Courthouse, 75 Ted Turner Drive, S.W., Atlanta, GA 30303.

Dated:  This 11th day of January, 2019.

                                            */s/ Molly Hiland Parmer*
                                            MOLLY HILAND PARMER
                                            Georgia Bar No.  942501
                                            ATTORNEY FOR MR. DETLING

FEDERAL DEFENDER PROGRAM, INC.
Centennial Tower, Suite 1500
101 Marietta Street, N.W.
Atlanta, Georgia 30303
(404) 688-7530; Fax (404) 688-0768
Molly_Parmer@fd.org