IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

CHALMER DETLING, II,

Defendant.

CRIMINAL CASE NO.
1:18-cr-00309-LMM-LTW-1

## MAGISTRATE JUDGE'S ORDER AND FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL

This matter is presently before the Court on Defendant Detling's Motion to Dismiss Counts for Lack of Jurisdiction, Motion to Dismiss Indictment for Failure to Allege an Offense, and Motion for Bill of Particulars.  (Docs. 26, 27, 28).  For the reasons outlined below, the Court **RECOMMENDS** that Defendant's Motion to Dismiss Counts for Lack of Jurisdiction be **DENIED AS MOOT** (Doc. 26), Motion to Dismiss the Indictment for Failure to Allege an Offense be **DENIED** (Doc. 27).  Lastly, Defendant's Motion for Bill of Particulars is **DENIED**.  (Doc. 28).

## BACKGROUND

On August 8, 2018, a grand jury in the Northern District of Georgia returned an Indictment charging Defendant Chalmer Detling, II ("Defendant") with seven counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts One through Seven) and seven counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1) (Counts

Eight through Fifteen).  (Doc. 1).  After Defendant filed the motions now under consideration, a grand jury returned a Superseding Indictment.  (Doc. 35).  The Superseding Indictment is identical to the initial Indictment except for the addition of a sentence in the fourth paragraph: "SunTrust is headquartered in Atlanta, Georgia, and possesses its ACH and wire transfers in Orlando, Florida."  (Doc. 35, ¶4).  For this reason, the Court construes Defendant's Motion to Dismiss Counts for Lack of Jurisdiction (Doc. 26) and Motion to Dismiss the Indictment for Failure to Allege an Offense (Doc. 27) as challenges to the Superseding Indictment.  The Motion for Bill of Particulars (Doc. 28) is not specific to any charging instrument.

## I.    THE SUPERSEDING INDICTMENT

The Superseding Indictment alleges Defendant committed wire fraud and aggravated identity theft by obtaining litigation advances in his law firm's clients' names without the clients' knowledge or authorization. (Doc. 35, ¶1). The Superseding Indictment begins by providing background information about Defendant and the litigation financing entities he allegedly defrauded.  (Id. ¶¶ 1-9).  Defendant is an attorney[1] who owned and operated Detling Law Group, a law firm primarily engaged in personal injury law. (Id. ¶ 1).  Injury Financial, LLC d/b/a Capital Financing, Litigation Ventures LLC, Mighty Financing LLC, and LFC Group (collectively, the "litigation financing entities") are companies that provide litigation advances to plaintiffs. (Id. ¶¶

---

[1] According to Superseding Indictment, Defendant voluntarily surrendered his law license and is no longer licensed to practice law in Georgia.  (Doc. 1, ¶ 1).

2

5-8). The litigation financing entities provide modest sums to plaintiffs, mainly with pending personal injury cases, for non-litigation related expenses, such as living and medical expenses. (Id. ¶ 10). A plaintiff applies for a litigation advance by electronically submitting a signed financing agreement by email or through an online portal. (Id.). Although the financing agreement contemplated repayment with interest, the litigation financing entities do not consider litigations advances to be loans. (Id.). Instead, financing entities characterize litigation advances as investments because plaintiffs who do not receive any recovery from their lawsuits are not obligated to repay the advances. (Id.). In determining whether to provide a litigation advance to any particular plaintiff, the litigation financing entities consider the merits of the plaintiff's lawsuit. (Id.).

Defendant is accused of using the personal identifying information[2] ("PII") of his clients, without their permission, to apply for and obtain litigation advances in his clients' names. (Doc. 35, ¶ 12). Defendant allegedly submitted applications and agreements to the litigation financing entities with his clients' signatures knowing that the documents were not actually signed by his clients. (Id.). The litigation financing entities did not require the clients' presence to apply for or receive funds. (Id. ¶ 13). Defendant further concealed his actions by directing the litigation financing entities to

---

[2] Defendant allegedly used the names, dates of birth, and Social Security numbers of his clients. (Doc. 35, ¶¶ 12, 23).

3

send the litigation advances directly to his law firm's IOLTA[3] account, personally picking up the checks from the litigation financing entities, and providing the litigation financing entities with fake phone numbers and email addresses for the clients. (Id. ¶¶ 13, 14, 16). The Superseding Indictment states that the litigation advances were ultimately transferred to Defendant's law firm's operating or other accounts. (Id. ¶ 15). In total, Defendant is accused of obtaining approximately fifty (50) fraudulent litigation advances from the litigation financing entities. (Id. ¶¶ 17-20).

The Superseding Indictment asserts seven counts of wire fraud (Counts One through Seven) in violation of 18 U.S.C. § 1343 and includes a chart with the date and brief description of each of the seven wire communications. (Doc. 35, ¶ 21). For the aggravated identity theft charges in violation of 18 U.S.C. § 1028A(a)(1) (Counts Eight through Fifteen), the Indictment incorporates the factual allegations and charges in paragraphs one through twenty-one of the Indictment. (Id. ¶¶ 22–23). Counts Eight through Fifteen are arranged in a chart that provides the date of the offense, the related felony, the initials of the client whose identity was used, and the means of identification. (Id. ¶ 23).

## MOTION TO DISMISS COUNTS FOR LACK OF JURISDICTION

Defendant moved to dismiss Counts Four through Seven and Counts Eleven

---

[3] IOLTA stands for "Interest on Lawyer Trust Account." (Doc. 35, ¶ 3). An IOLTA account is used to deposit client funds that are nominal or to be held for a short period of time. Id. Funds in an IOLTA account are the property of the client and not the lawyer. Id.

through Fifteen for lack of federal jurisdiction. (Doc. 26). Defendant posits that Counts Four through Seven fail to allege a federal offense because the Superseding Indictment does not provide the geographic location for SunTrust. (Id. ¶ 6.) Without the geographic location, the Superseding Indictment fails to show transmission of interstate wire communications as is required for § 1343. (Id.) As a result, Defendant contends that Counts Eleven through Fifteen for aggravated identity theft should be dismissed because they are not supported by a related felony.[4] (Id. ¶ 8.)

The Superseding Indictment, however, added the location of SunTrust's headquarters (Atlanta, Georgia) and the location where SunTrust processes its ACH and wire transfers (Orlando, Florida). (Doc. 35, ¶ 4). Defendant concedes that the addition cured the jurisdictional deficiency. (Doc. 41, at 2). Accordingly, Defendant's Motion to Dismiss Counts For Lack of Jurisdiction should be **DENIED AS MOOT**. (Doc. 26).

## MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO ALLEGE AN OFFENSE

Defendant argues the Superseding Indictment should be dismissed for failing to allege an offense. (Doc. 27). Fraud requires intent to defraud and a lie about the nature of the bargain itself. (Id. at 4). Defendant asserts that the facts in the Superseding indictment, if true, do not indicate that Defendant intended to defraud the litigation financing entities. (Id. at 2-5). Further, the Superseding Indictment does not show that the litigation financing entities did not get what they sought: an equitable interest in the

---

[4] Counts Eleven through Fifteen incorporates Count Four through Seven as the predicate felonies. (Doc. 35, ¶ 23).

outcome of the lawsuit.  (Id. at 2-3).  Defendant's apparent authority bound his clients to the agreements; thus, the litigation financing entities obtained their investments in the ongoing lawsuits.  (Id. at 2, 6).  Because the aggravated identity theft charges are predicated upon wire fraud, the aggravated identity theft charges must also fail.  (Id. at 6.)

In response, the Government argues the litigation financing entities did not receive the benefit of the bargain.  (Doc. 33, at 9).  The Government asserts that the Superseding Indictment does not claim that the litigation financing entities sought an investment opportunity, but advanced funds to cover "living expenses and/or medical expenses" for plaintiffs with a pending lawsuit.  (Id. at 10).  None of Defendant's clients received the litigation advances because the funds were transferred to his law firm's accounts.  (Id.).  The Government contends that the litigation financing entities were unaware that Defendant's clients did not apply for or receive the litigation advances, which was the purpose of the transaction.  (Id. at 10-11).

## I.    LEGAL STANDARD

Rule 7(c) of the Federal Rules of Criminal Procedure states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . "  Fed. R. Crim. P. 7(c).  Defendant may file a motion alleging a defect in the indictment or information, including a defect amounting to "failure to state an offense."  Fed. R. Crim. P. 12(b)(3)(B)(v).  "An indictment is considered legally sufficient if it: (1) presents the essential elements of the charged

offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Schmitz, 634 F.3d 1247, 1259 (11th Cir. 2011) (quoting United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009)).  "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense [sic] intended to be punished." United States v. Garrett, 467 F. App'x 864, 867 (11th Cir. 2012) (citing Hamling v. United States, 418 U.S. 87, 117 (1974)); see United States v. Critzer, 951 F.2d 306, 307-08 (11th Cir. 1992) ("The indictment is sufficient if it charges in the language of the statute."); United States v. Malone, No. 804CR348T24TGW, 2005 WL 1243762, at *3 (M.D. Fla. May 25, 2005) (denying a motion to dismiss an indictment because it tracked the language of the statute setting forth the essential elements of the crime).

An indictment that tracks the language of the statute must be accompanied by a statement of "facts and circumstances that will inform the accused of the specific offense, coming under the general description, with which he is charged." Russell v. United States, 369 U.S. 749, 765 (1962) (quoting United States v. Hess, 124 U.S. 483, 487 (1888)); United States v. Bobo, 344 F.3d 1076, 1083 (11th Cir. 2003).  But an indictment does not have to "detail the factual proof that will be relied upon to support the charges." United States v. Sharpe, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006)

(quoting United States v. Crippen, 579 F.2d 340, 342 (5th Cir. 1978)).

The sufficiency of a criminal indictment is determined on its face.  See id. at 1263 (explaining that it was improper for the trial court to dismiss the indictment based on the sufficiency of evidence presented at trial); United States v. Salman, 378 F.3d 1266, 1267-68 (11th Cir. 2004) (reversing the dismissal of an indictment where the trial court looked beyond the face of the indictment).  The Court must accept the facts in the indictment as true and may not rely on outside facts presented by defendants or facts that need to be developed at trial.  See Sharpe, 438 F.3d at 1257-59; Salman, 378 F.3d at 1267-68; United States v. Plummer, 221 F.3d 1298, 1302 n.3 (11th Cir. 2000) (reversing the dismissal of an indictment because the district court relied upon facts not in the indictment).  A court must read the indictment "as a whole and give it a 'common sense construction.'" United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009) (quoting United States v. Gold, 743 F.2d 800, 813 (11th Cir. 1984)).  The Court must ultimately determine whether "the factual allegations in the indictment, when viewed in the light most favorable to the government, [are] sufficient to charge the offense[s] as a matter of law." United States v. deVegter, 198 F.3d 1324, 1327 (11th Cir. 1999) (quoting United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987)).

## II.   THE INDICTMENT SUFFICIENTLY ALLEGES WIRE FRAUD

Defendant argues the Superseding Indictment fails to allege all the essential elements of wire fraud. (Doc. 27).  "The elements of wire fraud under 18 U.S.C. § 1343 are (1) intentional participation in a scheme to defraud and (2) use of the interstate wires

8

in furtherance of the scheme." <u>United States v. Hasson</u>, 333 F.3d 1264, 1270 (11th Cir. 2003) (citing <u>United States v. Ross</u>, 131 F.3d 970, 984 (11th Cir. 1997), <u>cert. denied</u>, 541 U.S. 1056 (2004)).   The undersigned finds that the Superseding Indictment is sufficient because it tracks the language of 18 U.S.C. § 1343 and alleges the elements of said statute.   <u>See</u> <u>United States v. Parker</u>, No. 1:05-CR-45 ODE, 2006 WL 8443230, at *3 (N.D. Ga. Oct. 6, 2006) (denying a motion to dismiss an indictment because the defendant's intent and the materiality of the misrepresentation were adequately alleged in the indictment and the sufficiency of the supporting evidence should be decided at trial), <u>report and recommendation adopted</u>, No. 1:05-CR-045, 2007 WL 9734884 (N.D. Ga. Apr. 13, 2007).

### A.     The Indictment Tracks the Language of the Statute

Paragraph 21 of the Indictment is drafted in substantially the same language as the wire fraud statute.   18 U.S.C. § 1343 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1343.   Paragraph 21 of the Superseding Indictment provides:

> On or about the dates set forth in the table below . . . DETLING for the purpose of executing and attempting to execute the scheme and artifice . . . such scheme and artifice having been devised and intended to be devised to defraud, and for the purpose of obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, as well as by omissions of material fact, knowing and having reason to know

9

that the pretenses, representations, promises, and omissions were and would be material, did knowingly cause the following wire communications to be transmitted in interstate commerce . . . [a]ll in violation of Title 18, United States Code, Section 1343.

(Doc. 35, ¶ 21).  The following phrases from the Indictment are pulled from the statute: "scheme and artifice;" "devised and intended to be devised to defraud;" "for the purpose of obtaining money and property;" "false and fraudulent pretenses, representations, and promises;" and "cause the following wire communications to be transmitted in interstate commerce."  Compare (Doc. 35, ¶ 21) with 18 U.S.C. § 1343.

### B.   The Indictment Alleges the Use of Interstate Wires in Furtherance of the Scheme

Wire fraud requires the knowing or reasonably foreseeable use of interstate wires in furtherance of the scheme.  United States v. Hasson, 333 F.3d 1264, 1272 (11th Cir. 2003).  The Superseding Indictment alleges that Defendant had the litigation financing entities wire litigation advances to his IOLTA account, which he then transferred to his law firm's operating and other accounts.  (Doc. 35, ¶¶ 14-15).  Defendant maintained IOLTA accounts at SunTrust, which is headquartered in Atlanta, GA.  (Id. ¶ 4).  One of the litigation financing entities maintains its servers in Florida and the other litigation financing entities have business accounts in New York.  (Id. ¶ 5-8).  Because the alleged scheme caused funds to be wired from other states to Defendant's IOLTA account at SunTrust, the Superseding Indictment sufficiently alleges the foreseeable use of interstate wires in furtherance of the scheme.  See Hasson, 333 F.3d at 1272 (holding that a jewelry-selling scheme that resulted in funds being transferred between states involved

10

the foreseeable use of wire transfers); United States v. Ross, 131 F.3d 970, 985 (11th Cir. 1997) (holding that it was clearly foreseeable that a transaction between companies in different states would involve wire transfers).

### C.   The Indictment Alleges Defendant Intentionally Participated in a Scheme to Defraud

"A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property."  United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009).  A misrepresentation is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision maker to whom it is addressed."  Hasson, 333 F.3d at 1271.[5]

Defendant argues the Superseding Indictment does not adequately allege that he intended to harm the litigation financing entities.  (Doc. 27, at 2-6).  In addition, Defendant contends that he did not defraud the litigation financing entities because the alleged material misrepresentation, that his clients authorized him to obtain the litigation advances, does not go to the nature of the bargain.  (Id.).  The Superseding Indictment does not allege that Defendant was not representing the plaintiffs in civil matters that would qualify for litigation advances or that the litigation financing entities did not evaluate the merits of the plaintiffs' cases before approving the advances.  (Id. at 6).

---

[5] Though 18 U.S.C. § 1343 does not explicitly contain a materiality element, the Supreme Court has held that materiality is an element of the statute.  Neder v. United States, 527 U.S. 1, 21-25 (1999) (incorporating the materiality element from common law fraud); see also United States v. Teers, 591 F. App'x 824, 844 (11th Cir. 2014).

AO 72A
(Rev.8/82)

Personal injury lawyers often enter into agreements that are binding on their clients, even if the lawyers lacked authorization. (Id. at 2, 5-6). In situations where a lawyer exceeds his or her authority, the client's recourse is against the lawyer and not the other party to the agreement. (Id.). Therefore, the litigation financing entities got what they ultimately wanted: an investment in the underlying lawsuits. (Id.).

The Government responds that the litigation financing entities did not get the bargain they sought, as the litigation advances were supposed to be used for the client's living and medical expenses. (Doc. 33, at 10). According to the Government, the litigation financing entities did not receive the benefit of the bargain because they did not realize that the litigation advances were unauthorized and, instead of going toward plaintiffs' living and medical expenses, the funds were diverted to the law firm's operating expenses. (Id. at 10-11). Further, the Government asserts that Defendant's argument about the authority lawyers typically possess to bind their clients is irrelevant on a motion to dismiss. (Id. at 11 n.4).

Defendant replies that the agreement specifically states that: "the Assignment evidenced hereby is intended to and shall vest in CF (one of the alleged victims) a present right to the Proceeds to the extent of the obligations due" and the litigation financing entity may file "a security interest, lien or encumbrance in favor of CF." (Doc. 41, at 4.) Defendant contends that the litigation financing entities received the benefit of the bargain as soon as the agreement was signed. (Id.). Any misrepresentation did not go to the heart of the bargain, but an ancillary detail of who applied for and received the

12

funds, which the Government has not alleged the litigation entities cared about as long as they obtained their investment.  (Id. at 6).  However, the terms of the agreement are not properly considered on a motion to dismiss, as they fall outside the four corners of the Superseding Indictment.  See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) ("The sufficiency of a criminal indictment is determined from its face.").

Defendant relies heavily on United States v. Takhalov, 827 F.3d 1307, 1312 (11th Cir. 2016), modified, 838 F.3d 1168 (11th Cir. 2016), a recent Eleventh Circuit case. The defendants in Takhalov, nightclub owners, admitted to enlisting Eastern European women to pose as tourists and lure visiting businessmen to nightclubs. Id. at 1310.  The trial court had refused defendants' request for a jury instruction that the failure to disclose the financial arrangement was insufficient to convict. Id.  The Eleventh Circuit reversed and remanded the case because, had the requested instruction been given, a jury could have found that defendants lacked intent to defraud. Id. at 1321.  In reaching this conclusion, the Eleventh Circuit defined a scheme to defraud as a scheme "to deprive someone of something of value by trick, deceit, chicane, or overreaching." Id. at 1312-13 (quoting United States v. Bradley, 644 F.3d 1213, 1240 (11th Cir. 2011)).  If the deceit does not deprive a person of something of value, then the deceit does not constitute a scheme to defraud, "even if the transaction would not have occurred but for the trick." Id. at 1313.  A scheme where a "defendant merely 'induce[d] [the victim] to enter into [a] transaction' that he otherwise would have avoided" is not enough to support a conviction for wire fraud. Takhalov, 827 F.3d at 1310 (citing United States

13

v. Starr, 816 F.2d 94, 98 (2d Cir. 1987)).  Without an intent to harm, there is no scheme to defraud.  Id.  Defendant cites this example from Takhalov:

> "[The] defendant might lie about the price (e.g., if he promises that a good costs $10 when it in fact costs $20) or he might lie about the characteristics of the good (e.g., if he promises that a gemstone is a diamond when it is in fact a cubic zirconium).  In each case, the defendant has lied about the nature of the bargain and thus in both cases the defendant has committed wire fraud.  But if a defendant lies about something else – e.g., if he says that he is the long-lost cousin of a prospective buyer– then he has not lied about the nature of the bargain, has not 'schemed to defraud,' and cannot be convicted of wire fraud on the basis of that lie alone. . . .

Takhalov, 827 F.3d at 1313-14.

Defendant argues the instant case is analogous to the "long-lost cousin" example in Takhalov; however, the use of the litigation advances distinguish the instant case from Takhalov.  (Doc. 27, at 5; Doc. 41, at 5).  Unlike Takhalov, the Superseding Indictment does not merely allege that Defendant lied about his identity or his authorization from his the clients.  See generally (Doc. 35).  The Superseding Indictment alleges the litigation financing entities thought they were providing litigation advances to plaintiffs for medical or living expenses.  (Doc. 35, ¶ 10).  The Superseding Indictment asserts that instead of using the litigation advances for the intended purpose, Defendant transferred the funds to his law firm's operating account.  (Id. ¶¶ 14,15).  Although Defendant claims that the litigation financing entities nevertheless received their investments in pending litigation, it would be premature to decide whether the litigation

14

financing entities indeed received the benefit of the bargain they sought.[6] Such questions of fact must be resolved at trial.  See Takhalov, 827 F.3d at 1314 ("Thus, even if a defendant lies, and even if the victim made a purchase because of that lie, a wire fraud case must end in an acquittal if the jury nevertheless believes that the alleged victims received exactly what they paid for."); United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (reversing the dismissal of an indictment for mail fraud where the district court improperly considered evidence about whether the victim was entitled to the funds or whether the funds constituted a loan in evaluating the sufficiency of the indictment); United States v. Plummer, 221 F.3d 1298, 1302 n.3 (11th Cir. 2000) (criticizing the district court's dismissal of an indictment based on facts outside the four corners of the indictment); see also United States v. McLellan, No. 16-CR-10094-LTS, 2018 WL 1083030, at *4-5 (D. Mass. Feb. 27, 2018) (holding that the indictment need not allege facts about whether the victims of wire fraud received the benefit of the bargain to survive a motion to dismiss).  Similarly, the materiality of any alleged misrepresentation should be decided at trial. United States v. Gaudin, 515 U.S. 506, 522-

---

[6] A few decisions in the Eleventh Circuit and the Southern District of Florida have upheld convictions of wire fraud in violation of 18 U.S.C. § 1343 regardless of whether the victim received the benefit of the bargain.  See United States v. Foster, No. 13-20063-CR, 2014 WL 12687616, at *7 (S.D. Fla. Mar. 31, 2014) (stating that wire fraud does not focus on the victim's actual loss but on the defendant's intent to obtain money by fraud or deceit) (citing United States v. Artuso, 482 F. App'x 398, 402-03 (11th Cir. 2012)), aff'd, 878 F.3d 1297 (11th Cir. 2018);  United States v. Near, 708 F. App'x 590, 595-98 (11th Cir. 2017) (affirming a conviction of wire fraud though the victim received the performance contemplated under the contract).

15

23 (1995) (finding it unconstitutional for a trial judge to refuse to submit the issue of materiality to the jury); see Rhame, 2017 WL 5591273, at *7 (holding that defendants could argue materiality at trial); United States v. Parker, No. 1:05-CR-45, 2006 WL 8443230, at *3 (N.D. Ga. Oct. 6, 2006) (denying a motion to dismiss because materiality goes to the sufficiency of the evidence and should be raised at trial), report and recommendation adopted, No. 1:05-CR-045-ODE, 2007 WL 9734884 (N.D. Ga. Apr. 13, 2007).

At the Motion to Dismiss stage, the facts in the Superseding Indictment are sufficient to support the Government's theory that Defendant made material misrepresentations and deprived the litigation financing entities of what they sought in the bargain, either by obtaining the funds without authorization or using the funds for an unintended purpose. See United States v. Rhame, No. 1:16-CR-67-SCJ-CMS, 2017 WL 9474217, at *8 (N.D. Ga. Jan. 31, 2017) (rejecting the defendant's motion to dismiss an indictment because "the allegations in the indictment certainly allow for the Government's theory that Defendants did more than perpetrate an innocent trick on investors"), report and recommendation adopted, No. 1:16-CR-67, 2017 WL 5591273 (N.D. Ga. Nov. 20, 2017).  The Court's finding that misappropriating the funds could form the basis of a scheme to defraud is informed by persuasive reasoning set forth in United States v. Fullwood, No. 3:16-CR-48-J-34, 2016 WL 5106940 (M.D. Fla. Sept. 20, 2016) and United States v. Fard, No. 8:17-CR-131-J-33, 2018 WL 5112014 (M.D. Fla. Oct. 19, 2018).  In Fullwood, the defendant was indicted for *inter alia* wire fraud in

16

violation of § 1343. <u>Fullwood</u>, 2016 WL 5106940 at *1. The indictment alleged that the defendant solicited campaign donations for his reelection campaign, but transferred funds from his campaign account to a separate account for personal use. <u>Id.</u> Relying on <u>Takhalov</u>, the defendant moved to dismiss the indictment for alleging a scheme to deceive instead of a scheme to defraud. <u>Id.</u> at *7. However, the court rejected the motion because, in part, the instant case was distinguishable from <u>Takhalov</u>, reasoning that "a contributor's expectation about how his donation will be used does go to the essence of the bargain." <u>Id.</u> at *7 (citing <u>United States v. Schwartz</u>, 924 F.2d 410, 420-21 (2d Cir. 1991).

Though <u>Fard</u> involved a motion for bond pending appeal as opposed to a motion to dismiss, it also touched upon the issue of misappropriation of funds. <u>Fard</u>, 2018 WL 5112014 at *1. The court explained that in order for the defendant to be granted release pending appeal, the defendant's appeal must (1) "raise a substantial question of law or fact" and (2) such question of law or fact will likely result in reversal, a new trial, or a new sentence with either no term of imprisonment or term of imprisonment that is less than time already served. <u>Id.</u> at *2. The argument for defendant's appeal was predicated on the insufficiency of evidence to support his conviction. <u>Id.</u> Since the victim received the benefit of the bargain, the defendant argued, there was no evidence of a scheme to defraud. <u>Id.</u> The court found that such an argument would likely not result in one of the aforementioned remedies for the defendant because a scheme to defraud "refers to schemes in which a defendant lies about the nature of the bargain." <u>Id.</u> (citing <u>Takhalov</u>,

17

827 F.3d at 1313; United States v. Near, 708 F. App'x 590, 598–602 (11th Cir. 2017). The court explained that the government presented evidence at trial that the defendant received funds for research but 70 percent of it was diverted for personal use. Id. at *3. Diverting the funds, the court explained, did establish that the defendant lied about the nature of the bargain. Id.

As was the case in Fullwood and Fard, the Superseding Indictment alleges that the funds from the litigation financing entities were intended for a particular purpose and Defendant misappropriated them. Accordingly, the Superseding Indictment sufficiently alleges a scheme to defraud. See United States v. Carty, No. 5:17-CR-26, 2018 WL 1778467 at *4 (M.D. Ga. Apr. 13, 2018) (finding that the Indictment does allege a scheme to defraud that struck at the heart of the bargain between the defendant and the victim). It is for trial court to determine whether the litigation financing entities obtained the benefit of the bargain they sought and whether Defendant's misrepresentations were material.[7]  For the aforementioned reasons, Court **RECOMMENDS** that the Motion to Dismiss the Indictment for Failure to Allege an Offense be **DENIED**. (Doc. 27).

## MOTION FOR BILL OF PARTICULARS

Defendant contends that the Government should be directed to file a bill of particulars, including: (1-2) the material misrepresentations; (3) a definition of "non-

---

[7] The Government was correct in stating that any statements about what lawyers generally do in litigation is outside the four corners of the Indictment and can not be considered in the motion to dismiss.  (Doc. 33 at 11 n.4); see Sharpe, 438 F.3d at 1263; Plummer, 221 F.3d at 1302 n.3.

18

litigation related expenses;" (4-7) the names that were used to secure the litigation advances; (8) the identity of the person who transferred the funds from the IOLTA accounts to the law firm's operating accounts; (9) the inaccurate contact information in the applications; (10) whether Defendant did not have permission to use his clients' means of identification or used their means of identification for an unlawful purpose; (11) information about how the litigation financing entities decide whether to provide a litigation advance; (12) the counts which relate to plaintiffs who had no recovery and did not have to repay the litigation financing entities; (13) victims other than the litigation financing entities; (14) what the litigation financing entities expected to receive for their investments; (15) the harm suffered by the litigation financing entities; and (16) the specific litigation advances that Defendant directed the litigation financing entities to send to the law firm's IOLTA accounts.  (Doc. 28, at 2-4).

The Government responds that the requested information is already contained in the indictment or the discovery.  (Doc. 33, at 13).  Defendant misrepresented to the litigation financing entities that his clients applied for and received the advance funds.  (Id. at 14).  Non-litigation expenses are anything not related to litigation, such as medical expenses, food, rent, etc... (Id. at 15).  The names of individual victims are in the discovery materials.  (Id.).  The Government construes the remaining requests as catch-all requests seeking details about actions taken by Defendant and his employees, representations on applications, theories about victimization and harm, practices and intentions of the litigation financing entities, and IOLTA account transactions.  (Id.).  By

AO 72A
(Rev.8/82)

seeking detailed information about the Government's evidence and legal theories, the Government contends the requests exceed the bounds of what can properly be obtained through a bill of particulars.  (Id.).

Defendant replies that the Court should order the Government to provide a short, concise statement of essential facts even if they are otherwise contained in discovery materials.  (Doc. 41, at 6-7).  Defendant reiterates that he requested the specific misrepresentations made to the litigation financing entities to better understand the fraud charges against him. (Doc. 41, at 7).  Defendant states the remainder of the requests are needed for trial preparation, seeking clarity on how Defendant used means of identification without lawful authority and how the litigation financing entities were defrauded.  (Doc. 41, at 8-9).

Pursuant to Federal Rule of Criminal Procedure 7(f), "[t]he court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f).  The purpose of a bill of particulars is "to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)).  A bill of particulars supplements an indictment by providing information *necessary* for a defendant to prepare for trial, and it is not meant to function as a discovery device. Anderson, 799 F.2d at 1441-42 (emphasis in original); see also United States v. Salisbury, 983 F.2d 1369, 1375 (6th Cir. 1993) (stating that a

20

bill of particulars "is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial") (citing United States v. Kilrain, 566 F.2d 979, 985 (5th Cir. 1978)); United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) ("Acquisition of evidentiary detail is not the function of the bill of particulars.") (quoting Hemphill v. United States, 392 F.2d 45, 49 (8th Cir. 1968), implied overruling on other grounds recognized, United States v. Lattimore, 946 F. Supp. 245, 246 (W.D.N.Y. 1996)). The Court is vested with broad discretion in deciding whether to grant a motion for bill of particulars. Cole, 755 F.2d at 760; United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981). However, "where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request for a bill of particulars may constitute reversible error." Cole, 755 F.2d at 760; see also United States v. Sharpe, 438 F.3d 1257, 1263 n.3 (11th Cir. 2006) (noting that an indictment need not allege in detail the factual proof that will be relied upon to support a charge but that failing to grant a motion for a bill of particulars to obtain information essential to the defense may be reversible error).

The information sought by Defendant is not necessary to avoid surprise or prepare his defense. The Superseding Indictment adequately informs Defendant of the allegations that support the charges of fraud and aggravated identity theft. (Doc. 35). The Superseding Indictment lists the dates of each offense, the initials of any person whose identity was used, and either the nature of the wire communication or the means of identification. (Doc. 35 ¶¶ 21, 23). See United States v. Martell, 906 F.2d 555, 558

(11th Cir. 1990) (holding that no more specific facts needed to be disclosed where the indictment provided sufficient information about the charges). The misrepresentations allegedly made by Defendant are explained in paragraphs eleven through sixteen of the Superseding Indictment. (Doc. 35, ¶¶ 11-16). Paragraph ten of the Superseding Indictment provides living and medical expenses as examples of non-litigation expenses. (Doc. 35, ¶ 10). The Government avers that it has provided victim statements that identify the individuals whose names were used to secure the litigation advances. (Doc. 33, at 15). Because the above information has been provided to Defendant, it does not need to be compelled in a bill of particulars. See United States v. Beverly, No. 7:10-CR-8 (WLS), 2010 WL 11474387, at *2 (Oct. 15, 2010) (holding that no bill of particulars is needed where "the information sought has already been provided by other sources, such as indictment and discovery" (quoting United States v. Roberts, 176 F. App'x 475, 477 (11th Cir. 2006))). The remaining requests fall into the category of generalized discovery seeking details about the Government's evidence and theory of the case. See United States v Warren, 772 F.2d 827, 837 (11th Cir. 1985) ("Generalized discovery is not a proper function of a bill of particulars."). Defendant has not persuaded the Court that he is unable to prepare a defense without the requested information. See Warren, 722 F.2d at 837 (affirming the trial judge's denial of a request for a bill of particulars where the defendant did not show the information was necessary to prepare a defense). Accordingly, Defendants' Motion for a Bill of Particulars is **DENIED**. (Doc. 28).

## CONCLUSION

The Court **RECOMMENDS** that Defendant's Motion to Dismiss Counts for Lack

of Jurisdiction be **DENIED AS MOOT** (Doc. 26) and Defendant's Motion to Dismiss the Indictment for Failure to Allege an Offense be **DENIED** (Doc. 27).   Lastly, Defendant's Motion for Bill of Particulars is **DENIED**.   (Doc. 28).   As there are no further motions or issues pending before the undersigned, this case is hereby certified ready for trial.

　　　**IT IS SO ORDERED AND REPORTED AND RECOMMENDED**, this  30  day of April, 2019.

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　LINDA T. WALKER
　　　　　　　　　　　　　　　　　　　　　　CHIEF UNITED STATES MAGISTRATE JUDGE