IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*versus*<br><br>CHALMER DETLING, II | Criminal Action No.:<br>1:18-CR-00309-LMM-LTW-1 |

### MOTION FOR NEW TRIAL

COMES NOW, the Defendant, Chalmer Detling, II, and hereby moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure and shows the Court the following:

### STATEMENT OF FACTS

Mr. Detling is charged by indictment with multiple counts of wire fraud and aggravated identity theft. Specifically, the indictment alleges that he, and he alone, committed four counts of wire fraud, in violation of 18 U.S.C. §1343 and five counts of aggravated identity theft, in violation of 18 U.S.C. §1028(a)(1). Doc. 35. The indictment does not allege either aiding and abetting or any facts suggesting additional participants in the alleged criminal conduct.

At trial, counsel for the government made an opening statement wherein he accused the defendant of committing all of the acts comprising the offenses charged in the indictment and made no reference to any other alleged participants. Doc. 164. In the first sentence of his opening, counsel for the government pointed to Mr.

Detling as solely responsible, "Ladies and gentlemen of the jury, this case is about a lawyer who betrayed the trust of his clients and his business partners to steal hundreds of thousands of dollars". Doc. 164-3. The government further explained to the jury, "...Chuck Detling, used his law firm's clients' personal identifying information to get litigation advances". Doc. 164-3. The government alleged that Mr. Detling "stole the money to prop up his financially strapped law firm". Doc. 164-3. According to the government, Mr. Detling "used his law firm's clients' information without their knowledge to enter into numerous litigation advance contracts" and he "used those litigation advances as a personal piggy bank that he tapped into whenever he needed funds". Doc. 164-6.

The government alleged that Mr. Detling "was in charge of the law firm". Doc. 164-9. In reference to other employees at the firm, the government suggested that they were naive and relied on Mr. Detling as to "how a law firm should be operated". Doc. 164-9. Specifically, the government referenced Aimie Ingram, the office manager, as someone who didn't know about the litigation advances. Doc. 164-10. While acknowledging that Mackenzie Cole was a partner at the firm, the government diminished her role as being "a partner in name only". Doc. 164-12.

The government further argued that the finance companies which were providing the litigation advances relied on Mr. Detling as the point of contact regarding the advances and his name was on all of these advances. Doc. 164-13, 14.

2

According to the government, Mr. Detling was in charge of the firm's bank accounts where the proceeds of the fraud were deposited. Doc. 164-14. Additionally, the government alleged he picked up the advance checks and provided the wire information for the funds to be sent. Doc. 164-13, 14. In reference to the firm's clients, the government claimed Mr. Detling was the only one "with authority to talk to clients about financing options". Doc.164-15. Manifest in all of these claims by the government, Mr. Detling acted alone and with actual knowledge of the fraud being perpetrated.

During the course of the government's case, no witness was presented as having assisted or helped Mr. Detling commit the offenses charged in the indictment. Indeed, the government's presentation of its case exclusively focused on Mr. Detling as the only participant in the fraud and identity theft. Moreover, the government did not present any evidence that Mr. Detling consciously avoided knowing about fraudulent advances. Rather, the government presented evidence that he alone possessed the knowledge and access needed to commit the fraud. Throughout the trial, the defense alleged that other employees, notably Ms. Ingram and Ms. Cole had motive, access, and opportunity to commit the wire fraud and identity theft.

Both the government and the defense submitted numerous requests to charge the jury. The government submitted its requested charges prior to the beginning of trial on October 18, 2021. Doc. 136. In its initial request to charge, the government

did not seek to have the jury instructed on either deliberate ignorance or aiding and abetting. *Id.* Similarly, the defense filed its requested charges on the same date, October 18, 2021. Doc. 137. Included in the defense request to charge was a good faith defense charge. Doc. 137-12. An initial charge conference was held on October 28, 2021. Doc. 156. On October 29, the Court held a subsequent charge conference to discuss additional requested jury charges including a proposed theory of the defense charge. Doc. 157. The Court specifically declined to give the proposed instruction on the theory of the defense but provided Mr. Detling with an opportunity to submit a brief on the following day to submit legal authority for its request. Doc. 157. At the close of the evidence, the Court heard arguments on a motion for a judgment of acquittal pursuant to Rule 29, Federal Rules of Criminal Procedure, and denied the motion. Doc. 157. Thereafter, the Court recessed trial and gave the parties the weekend to prepare for closing arguments. Doc. 157.

The following day, Saturday, October 30, 2021, Mr. Detling submitted a brief in support of his theory of the defense charge. Doc. 150. The defense sought the following jury charge:

> The indictment charges Mr. Detling acted alone in committing wire fraud and aggravated identity theft. You cannot convict him for conduct engaged in by either Mackenzie Cole or Aimie Ingram because he is not charged with being in a conspiracy with them or aiding or abetting them. You must decide whether the government has met its burden of proving beyond a reasonable doubt that he acted alone in committing these offenses regardless of whether you believe he engaged in other wrongdoing that is not charged in the indictment. The indictment upon

which you must base your decision does not charge Mr. Detling for engaging in a conspiracy or that he aided or abetted others in the commission of the charged offenses. Consequently, you must acquit if you believe there is a reasonable doubt that he acted alone.

After Mr. Detling submitted his brief, the Court suggested giving the following language, "[t]he Court has previously instructed you on the elements that the government must prove beyond a reasonable doubt for you to find Mr. Detling guilty of the crimes charged in the indictment. You must find that Mr. Detling personally engaged in all of the requested elements of the charged offenses for him to be guilty of those charges". Doc. 152-3, 4. On Sunday, October 31, Mr. Detling replied to the Court's newly suggested language in an email which stated, "We believe the 'requested' in the second sentence should be 'required'. Additionally, we would request that the Court add this last sentence, 'if you believe that there is reasonable doubt that anyone else committed an element of the charged offenses instead of Mr. Detling, then you must acquit.' We believe it is a correct statement of the law and is based on the evidence that was admitted at trial".[1] The government objected to the Court's suggested charge. Doc. 152-4.

In the government's response to Mr. Detling's brief and for the first time, the government requested that the Court instruct the jury on deliberate ignorance, if the good faith defense charge was given. Doc. 152-6. The government also requested

---

[1] A copy of the email chain between the Court and the defense as well as the government is attached hereto as Attachment A.

that the jury be instructed on aiding and abetting. Doc. 152-8. Specifically, the government requested a modified version of Eleventh Circuit Pattern Jury Instructions (Criminal Cases) (2020), Special Instruction No. 8:

> If a Defendant's knowledge of a fact is an essential element of a crime, it's enough that the Defendant was aware of a high probability that the fact existed-unless the Defendant actually believed the fact didn't exist. "Deliberate avoidance of positive knowledge"- which is the equivalent of knowledge-occurs, for example, if a defendant submits applications for or receives funds from litigation advance companies and believes those applications or funds are for litigation advances for which the plaintiff-clients never asked for the funds but deliberately avoids learning that the plaintiff-clients never asked for the funds so he can deny knowledge of the fact that the plaintiff-clients never asked for the funds. So, in this example, you may find that a defendant knew that the litigation advance applications or funds were never asked for by the plaintiff-clients if you determine beyond a reasonable doubt that the defendant (1) actually knew that the plaintiff-clients had never asked for the funds, or (2) had every reason to know but deliberately closed his eyes. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew that the plaintiff-clients had not asked for the applications or funds.

Doc. 152-7. The government also requested The Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Special Instruction No. 7 with no modifications. Doc. 152-8, 9. On November 1, 2021, the morning of closing arguments, Mr. Detling objected to the Court giving either the deliberate ignorance charge or the aiding and abetting charge prior to the charge being given.[2]  Docs. 158, 166-4-5, 9-10, 10-11,

---

[2] Mr. Detling also preserved his objections to the Court's instructions to the jury after the instructions were given but the transcript containing those objections has not been created yet.

12, 18. The Court overruled Mr. Detling's objections to the jury charges requested by the government. Doc. 158. Specifically, the Court utilized the Eleventh Circuit Pattern Instruction for aiding and abetting. Doc. 153-7, 8. The Court gave Mr. Detling's requested charge on good faith but did not give the requested theory of defense charge. Docs. 137, 153-10. Finally, the Court rejected the government's request to charge on deliberate ignorance in part and gave a modified version of Eleventh Circuit Pattern Instructions, Instruction S8. Docs. 152, 153-11. During the government's closing argument, no reference was made to either deliberate ignorance or aiding and abetting or any evidence supporting those jury instructions. Doc. 165. The jury returned a verdict of guilty on all counts against Mr. Detling on November 1, 2021. Doc. 154.

## ARGUMENT

### I. The Court erroneously charged the jury on deliberate ignorance.

On Sunday, October 31, 2021, the day before closing arguments and after the evidence had closed, the government requested a jury instruction on deliberate ignorance. Doc. 152. The following morning, Mr. Detling objected to the instruction as there was no evidence to support it and it was contrary to the government's position throughout the trial that he had actual knowledge. Doc. 167. The Court rejected the government's requested instruction in part and gave only a portion of the deliberate ignorance pattern instruction. Eleventh Circuit Pattern Jury

7

Instructions (Criminal Cases) (2020), Special instruction S8.  The court instructed the jury:

> If a Defendant's knowledge of a fact is an essential part of the crime, it's enough that the Defendant was aware of a high probability that the fact existed-unless the Defendant actually believed the fact didn't exist. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew the fact.

Doc. 153-11.

The Court erred in giving any instruction on deliberate ignorance because there was no evidence of conscious avoidance of facts by Mr. Detling. The court further erred by giving only a portion of the pattern instruction and omitting the portion that explains the evidentiary finding required for the application of the charge.  Specifically, the court failed to give the portion of the pattern charge that instructs the jury:

> "Deliberate avoidance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents "So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the defendant (1) actually knew about the controlled substance, or (2) had every reason to know but deliberately closed [his] [her] eyes."

Eleventh Circuit Pattern Jury Instructions (Criminal Cases) (2020), Special Instruction No. S8.

The Annotations following Special Instruction S8 specifically provide that the instruction should not be given in the instant case. The Eleventh Circuit cites to *United States v. Stone*, 9 F.3d 934, 937 (11th Cir. 1993), cert denied, 513 U.S. 833 (1994) wherein the Court held a "'deliberate ignorance' instruction appropriate only when evidence in the record shows that the Defendant purposely contrived to avoid learning the truth". The Eleventh Circuit further cites to *United States v. Aleman*, 728 F.2d 492, 494 (11th Cir. 1984) for the proposition that such an instruction is only warranted when the evidence supports a finding that "the Defendant consciously avoided knowledge, not when the Defendant has actual knowledge." *See also United States v. Rivera*, 944 F.2d 1563, 1570-72 (11th Cir. 1991) and *United States v. Perez-Tosta*, 36 F. 3d 1552 (11th Cir. 1994).

The Court's instruction on deliberate ignorance is not harmless. In *Stone*, the Court emphasized the evidentiary foundation for a jury instruction on deliberate ignorance must be established before the jury can rely on it in its determination of whether a defendant acted knowingly. Specifically, the Court found the error in giving the instruction was harmless because the jury was instructed on the evidentiary basis which must be found before it can consider whether the defendant acted with deliberate ignorance. In the absence of such guidance, Mr. Detling was harmed by the instruction on deliberate ignorance. The partial version of the pattern charge was particularly harmful as it immediately followed the Court's instruction

9

regarding the good faith defense. The deliberate ignorance instruction created the false impression Mr. Detling could not possess the good faith belief necessary for the good faith defense. Consequently, this error requires the Court to grant a new trial.

Additionally, the flawed deliberate ignorance instruction given by the Court resulted in a constructive amendment of the indictment by allowing the jury to convict based on actual knowledge, deliberate ignorance, or some combination of the two. This is contrary to the allegation in the indictment that Mr. Detling had actual knowledge. A constructive amendment occurs when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment. *United States v. Peel*, 837 F.2d 975, 979 (11th Cir. 1988). A constructive amendment requires a per se reversal. *United States v. Keller*, 916 F.2d 628, 633 (11th Cir. 1990).

## II.   The Court Erred in Charging the Jury on Aiding and Abetting

The government's theory of prosecution as reflected in the language of the indictment was that Mr. Detling acted alone in defrauding the finance companies and using clients' personal information to obtain advances to which he was not entitled. Doc. 35. The government never varied from this position in its presentation of evidence at trial. Specifically, the government claimed that no one at the firm including Aimie Ingram and Mackenzie Cole participated in the fraud. Indeed, the

government relied heavily on these very witnesses as credible in pointing the finger at Mr. Detling.

Mr. Detling's defense at trial was that he relied in good faith upon the managing partner, Mackenzie Cole, and the office manager, Aimie Ingram, at the firm regarding the desire of clients to obtain litigation advances. The evidence at trial showed that on at least one occasion, Ms. Cole had transferred the funds from a litigation advance out of the firm's IOLTA account into the firm's operating account. The evidence further showed that Ms. Ingram may have forged the signature of Brandi Pajot (counts 4 and 12) on her litigation advance. In addition, Ms. Ingram acknowledged that she could easily forge Mr. Detling's signature. This evidence along with other evidence at trial showed both women could have committed the alleged wire fraud and aggravated identity theft.  In response, the government sought the aiding and abetting as a last minute attempt to counter the defense arguments after the close of the evidence. Doc. 152-8-9. The defense objection to this charge was overruled by the Court which gave the instruction on aiding and abetting. Docs. 153-7, 158, 165.

Giving an aiding and abetting instruction in the instant case with its unique factual circumstances presents a novel question of law. The novelty of the issue arises from the fact that neither the government nor the defense could find an Eleventh Circuit case with analogous facts where the use of the aiding and abetting

charge was upheld. On the morning of November 1, 2021, after the evidence was closed and closing arguments were about to be held, the Court advised the parties regarding a case which it had located, *United States v. Thomas*, 631 Fed. Appx. 847 (11th Cir. 2015).[3] Unfortunately, the opinion provides little about the facts of the case in the district court. A review of the circumstances leading to the charge being given in *Thomas* is revealing and demonstrates that it is factually distinguishable from the instant case. In *Thomas*, the indictment expressly referenced the defendant's wife, Mary Derheimer (M.D.) along with the defendant having control over the bank accounts into which the embezzled funds were deposited.[4] Indeed, M.D. is expressly referenced no less than six times and implicitly referenced no less than nine times in each count of the indictment. 1:13-241-CAP-LTW, Doc. 1. Accordingly, the government did not call M.D. as a witness and did not rely upon her to make its case. Instead, the government argued that if the defendant aided and abetted his wife, he was still guilty. 1:13-241-CAP-LTW, Doc. 115-33, 40. While the indictment in *Thomas* does not cite to 18 U.S.C. § 2 (the statute defining "principals" and referencing "aiding and abetting") it is readily apparent from the indictment that the government believed that the embezzled funds went to a bank

---

[3] This unpublished opinion does not have precedential authority and it can only be relied upon as "persuasive authority." See Rule 32.1, Federal Rules of Appellate Procedure (FRAP) and Rule 36-2, U.S. Ct. Of App. 11th Cir. Rules.

[4] The docket sheet in *United States v. Thomas*, 1:13-CR-241-CAP-LTW, Doc. 1.

account controlled by both the defendant and his wife, thereby potentially identifying her as a participant in the crimes charged in the indictment.

Mr. Detling's circumstances are dramatically different from those in *Thomas*. The indictment in the instant case makes no reference to either Ms. Cole or Ms. Ingram or anyone else participating in the fraud. Doc. 35. In fact, the indictment wrongly suggests that Mr. Detling, unlike the defendant in *Thomas*, controlled the accounts where funds from the advances were deposited. *Id.* The indictment makes no reference to the Detling Cole law firm or to Ms. Cole's access or control of the accounts as the managing partner of the firm. Unlike the prosecutor in *Thomas*, the government in the instant case called Ms. Cole and Ms. Ingram as witnesses and elicited testimony that they were not involved in any of the charged conduct. The defense was not on notice of the government's plan to rely on an aiding and abetting theory which was contrary to the specific allegations contained in in the indictment. This surprise after the close of the evidence was prejudicial. For example, the defense cross examination of Ms. Cole and Ms. Ingram would have been quite different if they had been identified in the indictment or at any point in the trial as co-wrong-doers.

Unlike the prosecutor in *Thomas*, the government did not question the credibility of Ms. Cole or Ms. Ingram and did not argue that they played a role in the fraud. Despite requesting a last minute charge on aiding and abetting, the

government made no reference to the instruction in closing argument. In effect, the government appeared to be relying on the instruction defensively against Mr. Detling or perhaps to confuse the jury regarding the nature of his defense.[5] While Mr. Detling readily agrees that the Eleventh Circuit, as in *Thomas,* has upheld convictions where the indictment does not allege aiding and abetting, the government should not be permitted to change its theory of the defendant's culpability after the evidence is closed and closing arguments are scheduled to begin. The indictment in the instant case alleged that Mr. Detling acted alone in committing the fraud and theft. The defense was entitled to rely on the government's language in its own indictment in presenting the defense given that a defendant cannot aid and abet himself. *United States v. Martin*, 747 F.2d 1404 (11th Cir. 1984).

Mr. Detling contends that it was fundamentally unfair to allow the government to surprise him with a new theory of the prosecution at a point in time when he could no longer challenge the government's witnesses and present evidence to counter this new theory. Indeed, it is incumbent upon the Court to properly limit the basis for prosecution and the failure to do so may amount to an improper

---

[5] Importantly, Mr. Detling never argued that he helped Ms. Cole or Ms. Ingram commit the alleged offenses. He simply argued that the jury should acquit if they found reasonable doubt as to whether Ms. Cole or Ms. Ingram had committed any material elements of the offense without his knowledge.

amendment of the indictment. *See United States v. Artip*, 942 F.2d 1568 (11th Cir. 1991).

Here, the grand jury returned an indictment which unequivocally stated Mr. Detling acted alone. His defense was based on the language of the allegations in the indictment. While the grand jury could have alleged the participation of others, it did not. Consequently, the court erred by giving an aiding and abetting jury charge that constructively amended the indictment.

"A jury instruction that constructively amends a grand jury indictment constitutes per se reversible error because such an instruction violates a defendant's constitutional right to be tried only on charges presented in a grand jury indictment and creates the possibility that the defendant may have been convicted on grounds not alleged in the indictment." *United States v. Weissman*, 899 F.2d 1111, 1114 (11th Cir. 1990) citing *Stirone v. United States,* 361 U.S. 212, 217-18, (1960); *Peel*, 837 F.2d at 979; *United States v. Lignarolo*, 770 F.2d 971, 981 n.15 (11th Cir.1985), cert. denied, 476 U.S. 1105, 106 (1986). Other circuit courts have reached the same conclusion. *See United States v. Sanders*, 966 F.3d 397 (5th Cir. 2020)(wherein the Fifth Circuit found a constructive amendment where the government alleged knowledge in the indictment (when knowledge was not a required element of the statute) but the trial court instructed the jury that it was not required to find knowledge), *United States v. Phea*, 953 F.3d 838 (5th Cir. 2020)(wherein the Court

15

found a constructive amendment where the indictment alleged actual knowledge, the statute allowed proof of knowledge by another means, and the trial court instructed the jury that it could find knowledge under either theory), and *United States v. Hoover*, 467 F.3d 496 (5th Cir. 2006)(the trial court's jury charge improperly expanded the indictment by offering a theory by which the jury could find that the statements made by the defendant were false in a manner different than the manner set forth in the indictment in reliance on *Sirone v. United States*, 361 U.S. 212 (1960)).

Here the indictment alleged that Mr. Detling acted alone. The aiding and abetting instruction broadened the possible bases for conviction beyond what was contained in the indictment by allowing the jury to convict based on a theory of aiding and abetting. As such, the instruction resulted in a constructive amendment that requires a per se reversal of his conviction and the granting of a new trial.

## Conclusion

For the foregoing reasons, Mr. Detling asks that the Court grant his motion to vacate his conviction and grant a new trial.

Dated: This 7th day of December, 2021.

Respectfully Submitted,

*s/ Suzanne Hashimi*
Suzanne Hashimi
State Bar No. 335616

*/s/ Caitlyn Wade*
Caitlyn Wade
Georgia Bar No. 259114


Attorneys for Mr. Detling