IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| : | |
| : | CRIMINAL ACTION NO. |
| v.                                          : | 1:18-cr-00309-LMM-LTW-1 |
| : | |
| CHALMER DETLING, II,           : | |
| *also known as* Chuck Detling, : | |
| : | |
| Defendant.            : | |

## **ORDER**

This case comes before the Court on a Motion for New Trial, filed pursuant to Rule 33 of the Federal Rules of Criminal Procedure by Defendant Chalmer Detling, II. Dkt. No. [170]. After due consideration, the Court enters the following Order.

**I.   BACKGROUND**

Defendant was charged by indictment with four counts of wire fraud under 18 U.S.C. § 1343 and five counts of aggravated identity theft under 18 U.S.C. § 1028A(a)(1) for conduct associated with the fraudulent procurement of

litigation advances.[1] Dkt. No. [35]. A jury returned a verdict of guilty on all counts on November 1, 2021. Dkt. No. [154].

On December 7, 2021, Defendant filed the Motion for New Trial that is presently pending before the Court.[2] Dkt. No. [170]. He argues that he should be granted a new trial because the verdict was tainted by improper jury instructions. Id.

## II.     DISCUSSION

Rule 33 of Federal Rules of Criminal Procedure provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Defendant contends that he should be granted a new trial because the Court erroneously charged the jury on deliberate ignorance and aiding and abetting. Dkt. No. [170] at 7-16. As to the deliberate-ignorance charge, Defendant argues that the Court erred in giving any instruction because the evidence of record did not support the charge; that the Court improperly amended the pattern instruction; and that the Court constructively amended the indictment by allowing the jury to convict based on actual knowledge, deliberate ignorance, or some combination of the two. Id. at 8-10. Defendant argues that it was improper for the Court to instruct the jury

---

[1] The indictment describes "litigation advances" as modest financing afforded to plaintiffs, mainly those with personal-injury cases, for living and medical expenses while their lawsuits are pending. Dkt. No. [35] at 3.

[2] As a result of an extension order entered on November 10, 2021, the timeliness of the motion is not at issue. See Dkt. No. [161].

on aiding and abetting because the Government's theory of prosecution as reflected in the language of the indictment was that Defendant acted alone in defrauding finance companies and using clients' personal information to obtain advances to which he was not entitled, the defense was not put on notice of the Government's plan to rely on an aiding-and-abetting theory prior to the close of evidence, and the Government made no reference to the instruction in its closing argument, all of which Defendant contends resulted in constructive amendment and unfair surprise. Id. at 10-14.[3] The Court addresses each contention in turn.

### A.   Evidence at Trial Supported the Instructions

Defendant first argues that the Court erred in giving any instruction of deliberate ignorance because the charge was unsupported by the evidence. Id. at 8. A deliberate ignorance instruction is warranted when the facts "support the inference that the defendant was aware of a high probability of the existence of

---

[3]   Defendant raised additional arguments in his reply brief, but they are not considered here. See United States v. House, 684 F.3d 1173, 1210 (11th Cir. 2012) (refusing to consider an argument raised for the first time in a reply brief); see also United States v. Zambrano, 752 F. App'x 775, 781 n.4 (11th Cir. Oct. 9, 2018) ("[W]e do not consider arguments raised for the first time in a reply brief.") (citing United States v. Fiallo-Jacome, 874 F.2d 1479, 1481 (11th Cir. 1989)); United States v. Kendricks, Crim. Action File No. 1:15-cr-400-MHC/AJB, 2016 WL 11440141, at *5, n.4 (N.D. Ga. Aug. 22, 2016) (R&R) ("Arguments which are first raised in a reply brief are deemed waived."), adopted at 2016 WL 5952743 (N.D. Ga. Oct. 13, 2016).

Defendant also asserts in his opening brief that using the edited deliberate-ignorance charge was particularly harmful to him because it undercut his good-faith defense. Dkt. No. [170] at 9-10. Because Defendant does not explain how, this contention is similarly waived.

the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." United States v. Rivera, 944 F.2d 1563, 1571 (11th Cir. 1991) (internal quotation marks omitted).

    The argument that the deliberate-ignorance instruction was unsupported by the evidence is without merit. Defendant himself argued during a charge conference that the evidence was sufficient to enable the jury to conclude that he applied for the litigation advances because his colleagues—Mackenzie Cole and Aimee Ingram—had indicated to him that the clients had authorized him to do so and that he believed Ms. Cole would move the funds from the firm's IOLTA account to the clients. Dkt. No. [166] at 11:12-12:9, 13:4-9, 14:4-13. The evidence also showed that Defendant was responsible for approving his clients' settlement statements, that the settlement statements would include any legitimate litigation advances, and that his victim-clients' settlement statements did not include the advances; that Defendant had control of the three IOLTA accounts that were used to receive the fraudulent litigation advances and was the sole signatory on two of them, but the advances were never transferred from the firm's IOLTA accounts to the clients who supposedly needed them; and that several of his victim clients had expressly told him that they did not want or need a litigation advance. Together, these facts certainly support an inference that Defendant was aware of a high probability that the clients had not authorized the loan applications or

received the funds and that he purposefully contrived to avoid learning that they had not.

The evidence at trial also supported the aiding-and-abetting charge. "Under an aiding and abetting theory, the government must prove that the defendant in some way associated himself with the criminal venture, that he wished to bring it about, and that he sought by his actions to make it succeed." United States v. Broadwell, 870 F.2d 594, 608 (11th Cir. 1989). The aiding-and-abetting statute allows the finder of fact to find a defendant guilty of a substantive crime even though the person did not personally commit all acts constituting elements of the crime and may not even know the particular means by which all of the elements were committed. Id.

The evidence here shows that Defendant was associated with the fraudulent-loan scheme, wished to bring it about, and sought by his actions to make it succeed. The evidence showed that Defendant allowed Ingram and Cole to access one of the IOLTA accounts that was used as part of the fraud, that he had given Cole the title of "partner," that he did not personally interact with every victim client, and that Cole and other lawyers in the firm were involved in representing some of the victim clients. There was also evidence that Defendant signed the fraudulent loan agreements, picked up the fraudulently obtained checks, controlled the bank accounts where the funds from the fraudulent litigation advances were deposited, communicated with the financing companies

5

about the repayment status of the loans, and tried to make "payoffs" after the loans were discovered to be fraudulent. The evidence at trial therefore supported the aiding-and-abetting charge as well.

### B. Defendant Was Not Unfairly Surprised by the Deliberate-Ignorance or Aiding-and-Abetting Instructions

Defendant argues that he was unfairly surprised by the accomplice theories. Dkt. No. [170] at 14. This is false: it was in fact Defendant who raised the theory that he did not act alone.

The parties filed proposed jury instructions prior to trial. Dkt. Nos. [136, 137]. Neither proposal included instructions on deliberate ignorance or aiding and abetting, id., but Defendant's proposed instructions included a good-faith charge, Dkt. No. [137] at 12.

The Court held its first charge conference on October 28, 2021, before the Government concluded its case in chief. Dkt. Nos. [157, 166]. During the conference, Defendant argued that a good-faith instruction was appropriate because a jury could conclude that Cole and Ingram caused him to apply for the litigation loans by indicating to him that the clients had authorized him to do so and that he believed Ms. Cole would move the funds from the firm's IOLTA account to the clients. Dkt. No. [166] at 11:12-12:9, 13:4-9, 14:4-13. In charge discussions over the next couple of days, Defendant argued that the jury must be instructed that because he was not charged with conspiracy or aiding and abetting, it must acquit if it found reasonable doubt that Defendant acted alone.

Dkt. No. [150] at 1-2. The Court therefore finds no foundation for Defendant's argument that he was surprised by any theory that he did not act alone.

### C.     The Instructions Did Not Constructively Amend the Indictment

As to Defendant's argument that the deliberate-ignorance and aiding-and-abetting charges amounted to constructive amendments of the indictment, or, in other words, that Defendant could not be found guilty unless the jury determined that he personally committed each element of the charged crimes because he was not charged with conspiracy or aiding-and-abetting, see Dkt. No. [170] at 10, this, of course, is a misstatement of the law. A court does not constructively amend an indictment by giving a deliberate-ignorance charge; rather, courts in this circuit recognize " 'deliberate ignorance of criminal activity as the equivalent of knowledge.' " United States v. Wentt, 828 F. App'x 526, 528 (11th Cir. Sept. 17, 2020) (quoting United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993)). That is to say, " '[t]he knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance.' " Wentt, id. (quoting United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000)). Likewise, aiding and abetting is a theory of criminal liability that is embedded in every count charged in an indictment. United States v. Philpot, 773 F. App'x 583, 590 (11th Cir. July 12, 2019); United States v. Thomas, 631 F. App'x 847, 851 (11th Cir. Nov. 19, 2015); United States v. Walser, 3 F.3d 380, 388 (11th Cir. 1993); Broadwell, 870 F.2d at 608.

**D.     Harmless Error**

The remainder of Defendant's arguments were not raised at trial. Under Rule 30 of the Federal Rules of Criminal Procedure, a party must "inform the court of the specific objection and grounds for the objection before the jury retires to deliberate." Fed. R. Crim. P. 30(d). Where a party fails to do so, the plain-error standard applies. United States v. Iriele, 977 F.3d 1155, 1177 (11th Cir. 2020); United States v. Schlei, 122 F.3d 944, 973 (11th Cir. 1997); United States v. Sirang, 70 F.3d 588, 594 (11th Cir. 1995); see also United States v. Puche, 350 F.3d 1137, 1148 n.5 (11th Cir. 2003) (applying plain error review to an objection argued differently on appeal).

Plain-error review requires that a court consider whether it made "(1) an error (2) that is plain and (3) that has affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Xavier, 735 F. App'x 656, 659 (11th Cir. May 30, 2018) (citing United States v. Madden, 733 F.3d 1314, 1322 (11th Cir. 2013)); accord United States v. Turner, 474 F.3d 1265, 1275-76 (11th Cir. 2007) (explaining that "plain-error review is intended to enforce the requirement that parties lodge timely objections to errors at trial so as to provide the district court with an opportunity to avoid or correct any error, and thus avoid the costs of reversal and a retrial" and that "proof of a plain error involves not only a showing of harm, but also proof that the error was so conspicuous that the judge and prosecutor were derelict in countenancing it" (internal quotation marks

omitted)). Jury instructions are examined to determine whether, taken as a whole, the jury "was sufficiently instructed to understand the issues and was not misled." United States v. Jefferies, 378 F. App'x 961, 963 (11th Cir. May 11, 2010).

### *1.     Deliberate Ignorance*

The Court instructed the jury on deliberate ignorance at the Government's request. Using a portion of the pattern jury instruction for deliberate ignorance, the Court stated to the jury,

> If a Defendant's knowledge of a fact is an essential part of a crime, it's enough that the Defendant was aware of a high probability that the fact existed – unless the Defendant actually believed the fact didn't exist. But I must emphasize that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew the fact.

Dkt. No. [153] at 11.

Defendant newly argues that this was reversible error because the Court gave only the first and last sentences of the pattern instruction, omitted the middle portion, and thereby neglected to charge "the evidentiary finding required for the application of the charge."[4] Dkt. No. [170] at 8-9. Specifically, the Court omitted the portion of the pattern charge that instructs the jury:

---

[4] Defendant avers that he cannot point to the objection because that portion of the trial transcript is not yet complete. See Dkt. No. [178] at 6 n.6. This argument is baseless: at trial, the Court specifically asked the parties whether they opposed the modification; the Government explained that it agreed, and Defendant did not object to the modification. Dkt. No. [167] at 10-11, 15. Moreover, the Court granted Defendant an extension of time to file his motion for new trial, by which it extended the deadline to fourteen days after the requested portions of the trial transcript were prepared. Dkt. No. [161]. Thus, no material

9

> "Deliberate avoidance of positive knowledge" – which is the equivalent of knowledge – occurs, for example, if a defendant possesses a package and believes it contains a controlled substance but deliberately avoids learning that it contains the controlled substance so he or she can deny knowledge of the package's contents.
>
> So you may find that a defendant knew about the possession of a controlled substance if you determine beyond a reasonable doubt that the defendant (1) actually knew about the controlled substance, or (2) had every reason to know but deliberately closed [his] [her] eyes.

11th Cir. Pattern Jury Instrs. (Crim. Cases) (2021), Special Instr. No. S8.

There was no plain error in giving this instruction. Although the Court modified the pattern instruction as stated above, it properly instructed the jury regarding the knowledge standard when it instructed the jury that the government must prove every fact beyond a reasonable doubt; that " 'knowingly' means that an act was done voluntarily and intentionally and not because of a mistake or by accident"; and "that negligence, carelessness, or foolishness isn't enough to prove that the Defendant knew [a] fact." Dkt. No. [153] at 1, 6, 11. Thus, the jury was sufficiently instructed on the concept of deliberate ignorance.

Moreover, it is difficult to see how Defendant could have been prejudiced by the deliberate-ignorance instruction, as the evidence of actual knowledge in this case is overwhelming. The Eleventh Circuit "ha[s] repeatedly held that 'instructing the jury on deliberate ignorance is harmless error where the jury was

---

portion of the charge conferences should remain untranscribed. The objection is therefore subject to plain-error review.

also instructed and could have convicted on an alternative, sufficiently supported theory of actual knowledge.' " Wentt, 828 F. App'x at 528 (quoting United States v. Steed, 548 F.3d 961, 977 (11th Cir. 2008)); accord United States v. Ahrens, 782 F. App'x 845, 849 (11th Cir. July 26, 2019); United States v. Fernandez, 553 F. App'x 927, 937 (11th Cir. Feb. 3, 2014); Rivera, 944 F.2d at 1572.

That is the case here. Four witnesses from defrauded companies Capital Financing and Mighty testified that they dealt exclusively with Defendant on the fraudulent litigation advances and that they never would have approved them if they had known the clients had neither authorized the advances nor received the funds. The witnesses from Capital Financing testified that Defendant picked up the fraudulently obtained checks and that they dealt with Defendant exclusively about the status of repayment. The witnesses from Mighty testified that they spoke with Defendant over the telephone and even met with him in person on a few occasions. There was also evidence that when Mighty learned of the fraud, Defendant tried for months to make "payoffs" and ultimately reached an agreement with Mighty to "release" his former clients from any liability. The testimony was corroborated by voluminous e-mail correspondence and business records, including loan agreements signed by Defendant. Twelve victim clients also testified, including the five whose identities underlie the charges in the superseding indictment. They all testified that they had never authorized any of the financing contracts, and all but one testified that they would not have

11

authorized the financing if asked. In fact, several testified that they had expressly told Defendant that they did not want a litigation advance. Each of the victim clients also testified that they never received any of the funds from the financing companies, and that testimony was corroborated by an FBI agent who testified that she had traced the litigation advances and found that none of them went to Defendant's clients. The Government also presented overwhelming evidence that Defendant controlled the bank accounts where the funds from the fraudulent litigation advances were deposited, including bank records and testimony of his former colleagues. Defendant himself stipulated to many of these facts in proceedings before the Georgia Bar. In light of these facts, the Court finds that copious evidence of actual knowledge supported the guilty verdict.

For these reasons, the Court concludes that the deliberate-ignorance instruction, as given, was not contrary to the interest of justice and thus that the charge does not supply grounds for granting a new trial.

### 2. *Aiding and Abetting*

At the request of the Government, the Court instructed the jury on aiding and abetting as follows:

> It's possible to prove the Defendant guilty of a crime even without evidence that the Defendant personally performed every act charged. Ordinarily, any act a person can do may be done by directing another person, or "agent." Or it may be done by acting with or under the direction of others. A Defendant "aids and abets" a person if the Defendant intentionally joins with the person to commit a crime. A Defendant is criminally responsible for the acts of another person if the Defendant aids and abets the other person. A Defendant is also

12

> responsible if the Defendant willfully directs or authorizes the acts of an agent, employee, or other associate.
>
> But finding that a Defendant is criminally responsible for the acts of another person requires proof that the Defendant intentionally associated with or participated in the crime — not just proof that the Defendant was simply present at the scene of a crime or knew about it. In other words, you must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

Dkt. No. [153] at 7-8 (using 11th Cir. Pattern Jury Instrs. (Crim. Cases) (2021), Special Instr. No. S7).

Defendant argues that this was improper because the Government's theory of prosecution as reflected in the language of the indictment was that Defendant acted alone in defrauding finance companies and using clients' personal information to obtain advances to which he was not entitled; the defense was not put on notice of the Government's plan to rely on an aiding-and-abetting theory prior to the close of evidence; and the Government made no reference to the instruction in its closing argument. Dkt. No. [170] at 10-14. He contends that the Court therefore unlawfully permitted the Government to surprise him with a new theory of the prosecution at a point in time where he could no longer challenge the Government's witnesses or present evidence to counter the new theory and that the aiding-and-abetting instruction, in effect, impermissibly broadened the bases for conviction beyond the allegations contained in the indictment. Id. at 14-17 (citing United States v. Sanders, 966 F.3d 397 (5th Cir. 2020); United States v. Phea, 953 F.3d 838 (5th Cir. 2020); United States v. Hoover, 467 F.3d

13

496 (5th Cir. 2006); United States v. Artrip, 942 F.2d 1568 (11th Cir. 1991); United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990); United States v. Peel, 837 F.2d 975, 979 (11th Cir. 1988), abrogation recognized by United States v. Maradiaga, 987 F.3d 1315, 1323 n.2 (11th Cir. 2021) (explaining that a constructive amendment to an indictment does not necessarily require reversal); United States v. Lignarolo, 770 F.2d 971, 981 n.15 (11th Cir. 1985); United States v. Martin, 747 F.2d 1404 (11th Cir. 1984)).

The Court is unpersuaded by these arguments as well. First, as noted above, aiding and abetting need not be expressly charged, as it is a theory of criminal liability that is embedded in every count charged in an indictment. See supra Part II.C. While Defendant now seeks to distinguish the authority the Court relied on during the charge conference and in doing so makes clear his argument that an indictment that does not contain allegations against potential aides or abettors is per se constructively amended by an aiding-and-abetting charge, the Court notes that at trial he did not supply case law to support his objection or seek to distinguish the case law argued by the Government or cited by the Court. See Dkt. No. [167] at 5, 8-10. An "objection must be specific enough 'to give the district court the chance to correct errors before the case goes to the jury.' " Iriele, 977 F.3d at 1177 (quoting Sirang, 70 F.3d at 594). Because Defendant argued only in the abstract and did not make a clear objection or supply legal grounds for the objection before the jury retired to deliberate, the plain-error standard applies.

See Fed. R. Crim. P. 30(d); Iriele, 977 F.3d at 1177; Puche, 350 F.3d at 1148 n.5; Schlei, 122 F.3d at 973; Sirang, 70 F.3d at 594. Therefore, Defendant must show that the aiding-and-abetting charge affected his substantial rights and "seriously affect[ed] the fairness, integrity, or public reputation of [his] judicial proceedings." Xavier, 735 F. App'x at 659; Turner, 474 F.3d at 1276.

Defendant has not made such a showing. Contrary to Defendant's arguments regarding the timing of the request for the aiding-and-abetting charge, he has not shown that the timing of the request prejudiced him. The request for aiding-and-abetting charge was filed in the early afternoon the day before the jury was charged. Dkt. No. [152]. The Court held a final charge conference at 10:15 the next morning, where Defendant was invited to cite authority precluding the charge but failed to do so. Dkt. No. [167] at 5-6, 8-10. Moreover, while Defendant contends that he was prejudiced because the request came after the close of evidence, he had been aware that Cole and Ingram were on the Government's witness list, cross-examined them rigorously, and himself accused them of undertaking a portion of the conduct making up the charges against him. He also does not argue that the Court improperly denied a motion to reopen the evidence or state what evidence he would have sought to elicit if he had the opportunity to reopen the evidence.

Of the cases cited by Defendant, only Martin suggests that an unwarranted aiding-and-abetting charge may constitute reversible error. See Martin, 747 F.2d

15

at 1407-08.[5] However, subsequent to that opinion, the Eleventh Circuit Court of Appeals explained in United States v. Hornaday, 392 F.3d 1306 (11th Cir. 2004), that Martin's holding resulted from legal and factual errors and that under Supreme Court precedent, an unwarranted aiding-and-abetting charge constitutes error that "is harmless if, viewing the proceedings in their entirety, a court determines that the error did not affect the verdict, 'or had but very slight effect.'" Hornaday, 392 F.3d at 1315 (quoting Kotteakos v. United States, 328 U.S. 750, 762, 764 (1946) (citations omitted)). In other words, "[i]f one can say 'with fair assurance . . . that the judgment was not substantially swayed by the error,' the judgment is due to be affirmed even though there was error." Hornaday, id. at 1315-16 (quoting Kotteakos, id. at 1248).

In this case, despite Defendant's rigorous cross-examination, there is scant evidence that it was in fact Cole or Ingram who undertook any of the conduct of which Defendant was accused. Defendant himself asserts (without pointing to any evidence of record) only that Cole once transferred funds from a litigation advance from the firm's IOLTA account into the firm's operating account, that Ingram "may have" forged the signature of one victim client on the client's

---

[5] The propriety of an aiding-and-abetting charge was not on appeal in Sanders, Phea, Hoover, Artrip, Weissman, Peel, or Lignarolo. The Court also notes that in Lignarolo, the court found that although the jury instructions allowed for the satisfaction of an element of a charge on broader grounds that those alleged in the indictment, the defendant was not prejudiced. Lignarolo, 770 F.2d at 981 n.15.

litigation advance, and that Ingram acknowledged that she could easily forge Defendant's signature. Dkt. No. [170] at 11. In contrast, the evidence that Defendant personally undertook the conduct giving rise to the charges was overwhelming. Four witnesses from the defrauded companies testified that they dealt exclusively with Defendant on the fraudulent litigation advances. The witnesses from Capital Financing testified that Defendant picked up the fraudulently obtained checks and that they dealt with Defendant exclusively about the status of repayment. The witnesses from Mighty testified that they spoke with Defendant over the telephone and even met with him in person on a few occasions. There was also evidence that when Mighty learned of the fraud, Defendant tried for months to make "payoffs" and ultimately reached an agreement with Mighty to "release" his former clients from any liability. The Government also presented overwhelming evidence that Defendant controlled the bank accounts where the funds from the fraudulent litigation advances were deposited and was the sole signatory on two of the three accounts. Testimony was corroborated by voluminous e-mail correspondence, bank records, and business records, including loan agreements signed by Defendant. Defendant himself stipulated to many of these facts in proceedings before the Georgia Bar. In sum, there was copious evidence that all pointed toward Defendant as the sole actor undertaking the fraud and identity theft.

Moreover, as Defendant concedes, the Government did not argue aiding and abetting in closing arguments. Dkt. No. [170] at 13-14. And while the Court does not base its conclusion on the speed with which the jury reached its verdict, the fact that Defendant was found guilty on all counts in well under an hour suggests that the jury found no need to look beyond the evidence of Defendant's own conduct and delve into the more nuanced question of aiding and abetting.

For these reasons, the Court can say that if even any error was committed, "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error," that no reasonable jury would have been influenced by the instruction on liability under an aiding and abetting theory, and that Defendant's "substantial rights were not affected." Hornaday, 392 F.3d at 1315-16 (internal quotation marks omitted). The Court therefore concludes that the aiding-and-abetting charge was not contrary to the interest of justice and thus does not supply grounds for granting a new trial.

### III. CONCLUSION

In accordance with the foregoing, Defendant's Motion for New Trial, Dkt. No. [170], is **DENIED**.

**IT IS SO ORDERED** this 4th day of February, 2022.

**Leigh Martin May**
**United States District Judge**