IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

*versus*

CHALMER DETLING, II

Criminal Action No.:
1:18-CR-00309-LMM-LTW-1

## REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR APPEAL BOND

COMES NOW, the Defendant, Chalmer Detling, II, and hereby replies to the government's response to his Motion for Appeal Bond, pursuant to 18 U.S.C. § 3143(b) and shows the Court the following:

## ARGUMENT

In order to prevail on his motion for an appeal bond, Mr. Detling must show: (i) by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of the community; (ii) that his appeal is not for purpose of delay; and (iii) the appeal raises a substantial question of law or fact that is likely to result in reversal or an order for a new trial.  18 U.S.C. § 3143(b)(1).  On two prior occasions, this Court has determined that Mr. Detling met his burden with regard to the first requirement.[1]  As to the second requirement, the government concedes that Mr.

---

[1] After the return of the jury verdict, the government moved to detain Mr. Detling over defense objection. Doc. 158. The Court found by clear and convincing evidence that Mr. Detling was not a risk of flight or a danger to the community and denied the government's motion. *Id.* At Mr. Detling's sentencing hearing, the

Detling's appeal is not for the purpose of delay. Doc. 204 at 5.  Therefore, only the question of the third requirement remains.

Mr. Detling is not required to convince this Court that it committed reversible error despite the Government's frequent allusions to the contrary.  This Court's role is to decide only whether the defendant raises a substantial issue of law or fact that is critical enough to the defendant's conviction that a contrary appellate ruling would warrant a reversal. *United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985). And while it is clear that this Court must look into the nature of the appeal to decide if there is a "substantial question," it is also clear that it is not the role of this Court to substitute itself for the appellate court in deciding the ultimate merits of the appeal. But that is what the Government repeatedly asks the Court to do in its brief.

**I.     Mr. Detling raises a "substantial question" because the erroneous deliberate ignorance instruction given by the Court misstated the law as to the essential element of knowledge and resulted in a constructive amendment of the indictment.**

The government repeatedly mischaracterizes Mr. Detling's argument regarding the Court's deliberate ignorance instruction. Doc 204 at 7-9. Mr. Detling does not merely argue that the Court's instruction was "improperly worded," "erroneously worded," or that it "did not fully track the pattern instruction."  It is clear that Mr. Detling's argument regarding the deliberate ignorance charge is one

---

Court granted him voluntary surrender based on its finding by clear and convincing evidence that he was not a risk of flight or a danger to the community. Doc. 182.

of meaning and not "precise wording" or "phrasing."  Mr. Detling argues that the Court erred by omitting a critical requirement of the deliberate ignorance instruction. The resulting instruction misstated the law as to the essential element of knowledge and ultimately resulted in a constructive amendment to the indictment.  This issue is a "substantial question" that meets the *Giancola* standard.

The government's flawed characterization of Mr. Detling's argument continued into the matter of his trial objection to the deliberate ignorance instruction. The government argues that Mr. Detling never objected to the "wording" of the instruction. Doc. 204 at 10.  However, counsel's objection made clear that the instruction was inappropriate either in whole or "in part".  Doc. 167-10-11.  Once again, it is a matter of meaning and not simply "wording."  Mr. Detling properly objected to the deliberate ignorance instruction that was given.

The government argues that a deliberate ignorance jury instruction does not constructively amend the indictment. Doc. 204 at 7.  However, the government fails to meaningfully engage with Mr. Detling's argument that the deliberate ignorance argument given here—one that misstated the law as to the essential element of knowledge—constructively amended the indictment.  In a minimal attempt to address this point the government cited to and quoted *United States v. Jewell*, 532 F.2d 697, 700 (9th Cir. 1976) (en banc).  However, the Government failed to note that the deliberate ignorance instruction in *Jewell* included the very information that

the instruction in this case lacked: that the defendant must have deliberately avoided learning of a fact.[2]  The instruction in *Jewell* did not present the risk that the jury would convict the defendant based on a lesser mens rea standard of negligence or recklessness because it required "a conscious purpose to avoid learning the truth." *Id.*  In the instant case however, the mens rea standard was lessoned when the jury was instructed that it could find the necessary element of knowledge based only on Mr. Detling being aware of a high probability that a fact existed.  This resulted in a constructive amendment that would require reversal on appeal. *See  United States v. Behety*, 32 F.3d 503, 508 (11th Cir. 1994).

II.     **The Court's instruction to the jury on aiding and abetting without sufficient notice to the defense and when the government never argued such a theory presents a novel question of law in this circuit and is therefore a "substantial question".**

The government attempts to rebut Mr. Detling's contention that the error of giving of an instruction on aiding and abetting instruction without any notice just prior to closing argument presents a "substantial question."   Each of the government's five arguments on this point fail. First, as it has done before, the government reiterates the mundane point that aiding and abetting as a theory of criminal liability is "embedded" in the indictment regardless of whether it was

---

[2] The instruction in *Jewell* explained that the government must prove, "beyond a reasonable doubt, that if the defendant was not actually aware . . . his ignorance in that regard was solely and entirely a result of . . . a conscious purpose to avoid learning the truth." *Id.* at 704.

explicitly charged. Docs. 177-28-29; 204-19.  However, the government ignores the fact that not only was aiding and abetting not the theory of criminal liability outlined in the indictment in this case, but aiding and abetting was also not presented in opening statements and was not consistent with evidence presented by the government or requested by the government in its initial requests to charge. The impact of the aiding and abetting charge in this case was an unconstitutional ambush of the defense without notice just as closing arguments were set to begin. Mr. Detling contends that the unfair surprise of the aiding and abetting charge at such a late stage of the trial raises a "substantial question."

Second, the government argues that since the evidence at trial supported the charge on aiding and abetting, it was properly given. Doc. 204-19-20. The government's curious construction of the evidence adduced at trial obscures the thrust of the defense. Consistent with his defense during the State Bar hearings, Mr. Detling contended that he relied in good faith on his managing partner, Mackenzie Cole, and his office manager, Aimie Ingram, to handle the firm's financial affairs and that the evidence supported a reasonable doubt as to who had requested the advances and used them to keep the firm operational, thereby committing the fraud alleged in the indictment. Mr. Detling has never argued the alleged "defense" promoted by the government, "Detling possibly worked with others to commit the fraud scheme". Doc. 204.  More importantly, the Government consistently pursued

a theory that Mr. Detling acted alone in committing the fraud and that the employees, notably Cole and Ingram, were not participants in the fraud.  Neither the government nor the defense case supported an instruction on aiding and abetting.

Third, the government argues that Mr. Detling is not raising a novel question of law. Doc. 204-20. In support of this argument, the government relies on *United States v. Thomas*, 631 F. Appx 847 (11th Cir. 2015), an unpublished opinion with no precedential authority pursuant to Rule 32.1, FRAP, and Rule 36-2, U.S. Ct. of App. 11th Cir. Rules. As Mr. Detling previously noted in his Motion for New Trial, the *Thomas* decision was factually distinguishable from the instant case insofar as the *Thomas* indictment, the evidence presented by the government in its case in chief, and the government's arguments at trial gave the defendant notice of an aiding and abetting theory. Doc. 170-12-13. *Thomas* does not address the novel issue of whether the government can ambush the defense by consistently traveling under one theory of criminal liability from indictment until the parties are on the precipice of giving their closings and then changes its theory of prosecution. Consequently, the absence of any decision with precedential authority establishes Mr. Detling's issue is novel.

Fourth, the government argues that Mr. Detling was not surprised and claims his legal authority was "gutted" by the United States Supreme Court. *See Smith v. Lopez*, 731 F. 3d 859 (9th Cir. 2013), rev'd per curiam on other grounds, 574 U.S. 1 (2014). Mr. Detling was surprised by the government when it charged him in an

indictment as the sole perpetrator of the fraud, made no request for an aiding and abetting instruction in its initial requests to charge, made an opening statement consistent with the indictment alleging he acted alone with no one's assistance, presented evidence at trial that he alone committed the fraud, and then requested an aiding and abetting jury charge on the eve of closing arguments so that it could argue Mr. Detling aided and abetted Cole and Ingram in committing the fraud. The fact that Mr. Detling has consistently argued that Cole and Ingram committed the fraud does not establish that he was not surprised by an aiding and abetting jury charge. If Mr. Detling had received adequate notice before trial, he would have focused on the incongruity of the government's claim that he acted alone as reflected in the indictment and their later implication that he was aiding and abetting Cole and Ingram. His cross examinations of these two witnesses would have included lengthy questioning of them as to the charges they might have faced, and the potential penalties they could have received but for the government providing them with de facto immunity. Their testimony implicating Mr. Detling while claiming to have known and done nothing would have been quite suspect if the government had argued that Mr. Detling aided and abetted them.

In support of his position, Mr. Detling cited to *Smith v. Lopez*.  The United States Supreme Court in *Lopez v. Smith*, 574 U.S. 1 (2014), did not gut the legal principle that reversible error can occur when the defense is unfairly surprised by

the prosecution changing his theory of criminal liability at the end of a trial contrary to the indictment and presentation of evidence.   Instead, the Supreme Court observed, "Assuming, *arguendo*, that a defendant is entitled to notice of the possibility of conviction on aiding-and-abetting theory, the Ninth Circuit's grant of habeas relief may be affirmed only if **this Court's cases** clearly establish that a defendant, once adequately apprised of such a possibility, can nevertheless be deprived of adequate notice by a prosecutorial decision to focus on another theory of liability at trial". (Emphasis added). *Id.* at 3-4. The Court reversed the grant of habeas relief because it was unpersuaded that its own precedents had established this principle, a necessary prerequisite for habeas relief. Indeed, the government appears to be well aware of the precedent to *Smith v. Lopez* when it noted that "Smith relied on an earlier Ninth Circuit case, *Sheppard v. Rees*, 909 F. 2d 1234 (9th  Cir. 1989)". Doc. 204-22 n.13.   Other circuits have reached similar conclusions in noting that unfair surprise may render a prosecutor's late decision to change the theory of liability to aiding and abetting reversible. *United States v. Sanchez*, 917  F. 2d 607, 611 (1st  Cir. 1990); *United States v. Stepanets*, 879 F.3d 367, 375 (1st  Cir. 2018); *United States v. Neal*, 951 F.2d 630, 633 (5th  Cir. 1992); and *United States v. Loscalzo*, 18 F.3d 374, 383 (7th  Cir. 1994).

Fifth, the government argues that it was compelled to seek an aiding and abetting instruction to counter the defense of reasonable doubt arising from the

possibility of Cole and Ingram committing the offense. Such an argument rests on a weak foundation. The government did not reference the aiding and abetting instruction in its closing argument because such an argument would have run contrary to its indictment and presentation of evidence. Most importantly, it would have destroyed the credibility of two of its primary witnesses, Cole and Ingram, who claimed no knowledge or involvement in the fraud. An aiding and abetting instruction does not refute the defense that the offense may have been committed by others unbeknownst to Mr. Detling. The instruction, instead, unfairly surprised Mr. Detling and raises a "substantial question" on appeal.

## <u>Conclusion</u>

For the foregoing reasons, Mr. Detling asks that the Court grant his motion for an appeal bond.

Dated: This 18th day of April, 2022.

Respectfully Submitted,

*/s/ Suzanne Hashimi*
Suzanne Hashimi
Georgia Bar No. 335616

*/s/ Caitlyn Wade*
Caitlyn Wade
Georgia Bar No. 259114

Attorneys for Chalmer Detling, II